# Hoover *versus* Epler.

1. A person hired as a groom to a horse for a time specified and at a fixed price, has not a lien on the horse ; but he has a lien for feed, keeping and shoeing, which should have been furnished by the owner.

2. A contract to do so was not necessary to create the lien ; it was as if the horse had been left for keep and care without more being said.

3. The groom having paid the farrier's bill for shoeing, was entitled to all his rights.

4. Subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists ; but not in favour of a mere volunteer who pays the debt of another, without any duty, moral or otherwise.

5. The party whose rights are claimed to be used must be *fully satisfied*, before an equity will arise to the party claiming to use them.

6. Therefore, where a groom gave his note for the keeping, &c., of the horse, he could not claim to use the lien of the stable-keeper until he had paid the note.

[Hoover *v.* Epler.]

ERROR to the Court of Common Pleas of *Dauphin county.*

This was an action of replevin, commenced July 29th 1863, by R. C. Hoover against Abraham C. Epler, to recover a stallion belonging to Hoover, in which a case was stated for the opinion of the court.

Hoover, in January 1863, made a contract with Epler to take charge of his horse until the 1st day of August for $100; to attend him in the best manner, and obey Hoover's instructions. The horse was to be stationed at different places, afterwards fixed and advertised: the horse was fed at Epler's stable and at other places where he was stationed, and Epler had him shod and groomed. To the owner of one of the stables Epler gave his note for $31 for the horse's keep. He declined to give the horse up to Hoover, claiming the right to hold him for his own hire, $100; for the feed, &c., furnished by himself; and also for the bill of keeping for which he had given his note.

The court (Pearson, P. J.) gave judgment for the defendant.

*David Mumma,* for plaintiff in error, cited Lee *v.* Gould, 11 Wright 398; Erb's Appeal, 2 Penna. R. 296; Goswiler's Estate, 3 Id. 200; Himes *v.* Keller, 3 W. & S. 401; McGinnis's Appeal, 4 Harris 445; Lloyd *v.* Galbraith, 8 Casey 110; 2 Pars. on Cont. 401.

*Hamilton Alricks,* for defendant in error: Green *v.* Farmer, 4 Burr. 2220; Cross on Liens, 34 Law Lib. 2, 8, 2425, 341; Story on Agency, § 462; Story on Bailment, § 422, 440; Russell on Factors, 48 Law Lib. 191; Paley on Agency, 28 Id. 127; McIntyre *v.* Carver, 2 W. & S. 392; Steinman *v.* Wilkins, 7 Id. 466; Young *v.* Kimball, 11 Harris 195; Pierce *v.* Sweet, 9 Casey 151; Commonwealth *v.* Clarkson, 1 Rawle 291; Cross 28, 315, 340, 343; Pitman on Principal and Surety, 40 Law Lib. 133.

The opinion of the court was delivered, June 25th 1866, by

THOMPSON, J.—Gibson, C. J., in Steinman *v.* Wilkins, 7 W. & S. 466, in treating of the doctrine of liens by warehousemen and bailees, notices with seeming satisfaction the extension of it to other than bailments for skilled labour, or *locatio operi faciendi,* when something is to be done upon the thing bailed by one skilled, citing Bevan *v.* Waters, Moo. & M. 235, in which a trainer was allowed to retain for fitting a race-horse for the turf, and doubts the doctrine of the cases in England which denies that the agister of cattle has a lien. The foundation upon which this seems to rest is the idea above stated, to wit, that the lien results from labour and skill, and not from the improved condition of the thing bailed, by the labour and care of an unskilled bailee. "It is," he

[Hoover *v.* Epler.]

said, "difficult to find an argument for the position that a man who fits an ox for the shambles, by fattening it with his provender, does not increase its intrinsic value by means exclusively within his control." Certain it is, that the doctrine of liens in favour of bailees is not retrograding but advancing, and is a wholesome restraint on the credit system, which is generally injurious in individual transactions to both parties. C. J. Best, in Jacobs *v.* Latour, 5 Bingh. 132, said, "that the doctrine is so just between debtor and creditor it cannot be too much favoured." So in Kirkman *v.* Shawcross, 6 T. R. 17, Lord Kenyon·said it had been the wish of the courts, in all cases and at all times, to carry the lien of the common law as far as possible. It seems as if it were carried to the very verge in Scarfe *v.* Morgan, 4 M. & W. 270, where the owner of a stallion was held to be entitled to a lien for a single service, after the mare was known to be with foal. Of course such a lien could have no other foundation than the improved condition and increased value of the mare, independently of considerations of skill.

The contract with the defendant was a hiring as a servant to act as groom for the time specified, and in consideration to be paid a fixed sum at the end of the time. In that employment he was to obey all orders of his employer. As a servant merely, he was not entitled to a lien. But was he not also a bailee, and so to be regarded, when in order to subserve the interests of the plaintiff, independently and outside of the contract, he furnished what he was not bound to do, namely, the feed, keeping and shoeing, which ought to have been furnished by the owner ? The horse was in his custody ; it was necessary in order to keep him in condition, that these things should be furnished—the owner could not gainsay this—he did feed and keep him at his own stable, and paid for shoeing him ; and the benefit of it all went to the owner and none to the defendant. A contract to do so was not necessary to the existence of the lien ; the case stands as if the horse had been left for keep and care without more being said, in which case a lien would have ensued for it ; in other words, the plaintiff could not have demanded him without paying the charges. As to the farrier's bills for shoeing, having paid them, the defendant stood in the farrier's shoes and entitled to all his rights.

Subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists between the parties ; Cottrel's Appeal, 11 Harris 294 ; but not in favour of a mere volunteer, who without any duty or obligation, moral or otherwise, pays the debt of another. Here fidelity to his employer as well as duty to the animal required he should be shod, as well as fed and otherwise cared for, so that when the defendant paid the farrier's bill he was not a mere volunteer, and he could

[Hoover *v.* Epler.]

claim to retain him if the former could, about which there is no doubt.  Even, therefore, if he had no lien for his feeding, keeping and stabling, there was enough in this to carry the case for the defendant, it being agreed that if he had, at the bringing of the suit, the right to a lien against him on any of the claims made, then judgment was to be entered for him for the sum named.

·But I am not satisfied that the learned judge was right, in holding the defendant entitled to be subrogated to David Smith's lien as innkeeper.

It does not appear that he paid the bill.  The case stated leaves us in the dark about this, it only finds that he gave his note for it, and became responsible.  Nor is it said that the note was received by Smith as payment, nor even that it was negotiable, so that a presumption might arise that it was taken as payment.  So that there is nothing appearing to prevent Smith from demanding his bill from the plaintiff, if the defendant should fail to pay the note.  This, I think, would be fatal to the right of subrogation.  The rule is, that the parties whose rights are claimed to be used must be *fully satisfied* before an equity will arise in favour of the party claiming to use them: Kyner *v.* Kyner, 6 Watts 221.

As already said, this is not material to the result here, and the judgment is affirmed.