The opinion of the court was delivered by
Watkins, J.
This suit is brought by way of third opposition, opponents, F. Gumbel & Co., claiming the proceeds of the sale of property sold under and by virtue of the executory proceedings of J. A. Boyer vs. J. V. Moreau, in the foreclosure of a mortgage; by reason of their alleged precedence in rank of privilege and mortgage, resulting from an assignment to them of another of the same series of mortgage notes by J. A. Boyer, the seizing creditor, the proceeds of sale being insufficient to pay both.
To this third opposition the seizing creditor replied in answer, that opponents never purchased the note in question, but paid same, and thereby extinguished the mortgage securing its payment. Hence the sole question for the court to determine is whether the transaction between the parties was a purchase or payment of the note opponents found their claim upon.
This suit was brought before this court last year, and was remanded for the purpose of permitting the introduction of certain evidence that had been rejected by the court a qua, and this evidence having been admitted on a second trial, it is again before us for final decision. Ante, 46 An. 762.
It appears from the evidence that opponents were cotton factors, doing business in New Orleans, and that J. V. Moreau, the mortgagor, was their client, and had an open running account with them at the *1501 -date of the transaction in question. That in December, 1881, Morean purchased of Boyer a plantation, executing a series of several notes for the purchase price, securing same by special mortgage. It is with regard to one of these notes that this controversy took place.
It seems that Moreau requested opponents to pay Boyer this note -on presentation by him, but that on presentation payment was refused — first, because the letter to that effect was not written by Moreau personally; and, second, that they did not wish to pay, but would purchase the note if Moreau requested them to do sc.
On account of the delay incident to opponents obtaining a communication from Moreau on the subject, Boyer left the note in the hands of Hernandez, his own factor, for collection, and placed a transfer on the reverse of it — the endorsement being couched in the following words, viz.: “For value received, 1 hereby transfer the within note to Ferdinand Gumbel & Co. with all of the rights and interest I have in said note, without recourse against me.”
When Boyer subsequently met Moreau, he informed him that •opponents would require a letter from him (Moreau) before he would “ pay the note,” thus evidencing the clear and evident impression •of Boyer to have been that opponents would pay the note, and that his written endorsement was inte ded to facilitate this arrangement.
It appears to us to be of little co osequence what was the character •of the neg fiiations between opponents and Moreau, for, assuredly, they were powerless, by any mere convention of theirs, to perfect the ■sale of the note from Boyer to opponents. To accomplish this object, the assent of Moreau, the debtor, was altogether unnecessary and unavailing. The proof shows that, at the time of this transaction, Moreau had shipped sufficient cotton to the opponents to cover his debits and leave a small balance to his credit; and that he had additional cottons to ship them. It further shows that at the end of the season Moreau had a cash balance to his credit of about fifteen hundred dollars, not taking the note into consideration. It appears from the evidence that after third opponents filed their petition claiming the whole amount, they, on. their own motion, placed that amount to Moreau’s credit on the note.
Consequently, at the time of the correspondence between opponents and Moreau, it was, evidently, a question of doubt as to whether there would be a sufficient amount to the latter’s credit at the end of the cotton season to liquidate the note, and hence the *1502 evident hesitancy of opponents to pay the note for Moreau, and thus, place themselves in a situation in which they might sustain a loss, as-payment would destroy the security of a mortgage, and the funds in their hands be insufficient to meet Moreau’s account.
It thus becomes quite clear to our minds all that third opponents could claim is that the legal effect of this transaction was a payment., with subrogation to all the rights of Boyer against Moreau. But-that being conceded, the written endorsement of Boyer on the note,, when read in the light of the acts of the parties, could not be given the effect of placing the opponent’s privileges in the front rank and giving same preference over that of Boyer. The words of the assignment, “without recourse against me,” would be rendered meaningless otherwise.
If, in place of the formal .transfer without recourse, Boyer had placed his simple signature on the note, opponents could have in all likelihood availed themselves of the benefit of the rule of the commercial law to the effect that one who assigns to another one of a series of concurrent mortgage notes can not come in competition, with the assignee if the security be insufficient to pay both.
Our Civil Code establishes a contrary rule as governing a ease of this kind. It declares that such payment with subrogation “can not injure the creditor, since, if he has been paid but in part, he may exercise his right for what remains due, in preference to him for whom he has received only a partial payment.” Revised Civil Code, 2162.
. In the lower court there was judgment in favor of the plaintiff, decreeing him entitled to be paid the full amount of his claim out of' the proceeds of sale in preference to Boyer, the seizing creditor. That judgment must be reversed and the demands of opponents rejected.
It is therefore ordered and decreed that the judgment appealed from be reversed and annulled, and the demands of plaintiff rejected, at his cost in both courts.
Rehearing refused.