(38 South. 196.)

No. 15,389.

STATE ex rel. MOORE, Dist. Atty., et al. v. PERKINS, Tax Collector, et al.*

(Feb. 13, 1905.)

TAXATION—DEFAULTING TAX COLLECTOR—BOND —SUBROGATION—RIGHTS OF SURETIES.

1. Though the surety of a defaulting tax collector may be willing, without suit, to pay the

*Rehearing denied March 13, 1905.

amount called for by the bond which he has signed, he is not entitled to deduct a commission from such amount where it is less than that required for a full settlement.

2. The purpose of the bond required of a tax collector is to secure the faithful performance of all the duties of his office, including the payment into the treasury of all taxes collected by him, and, though the bond given may be insufficient in amount to meet the requirements of a particular occasion, the spirit and purpose of the contract (i. e., that the obligee shall be held harmless, at least up to the amount of the bond) are unaffected by that circumstance; and, as subrogation is essentially an equity, it follows that the surety who pays the amount called for by such bond does not thereby become subrogated to the right of the creditor, to the prejudice of the balance due to the latter, and to such effect that he (the surety) may recoup himself entirely and sustain no loss, whilst the creditor remains the loser in a matter with respect to which the bond was intended to protect him.

Provosty, J., dissenting.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by the state, on the relation of Joseph Moore, district attorney, and others, against John A. Perkins and another. Judgment for plaintiff, and defendant American Bonding Company appeals. Affirmed.

Sompeyrac & Toomer and Dufour & Dufour, for appellant. Pujo & Moss, for appellee Fidelity Trust Co. Robert L. Belden and Winston Overton, for appellee John A. Perkins. Walter Guion, Atty. Gen. (Lewis Guion, of counsel), for appellee the State. Leon Sugar, for appellee parish of Calcasieu. McCoy & Moss, for appellee parish board of directors.

Statement of the Case.

MONROE, J. Suits were brought against John A. Perkins, a defaulting and absconding tax collector, and against the American Bonding Company, his surety on a bond for $20,000, on behalf of the state, the parish school board, the Fidelity Trust Company, and the parish of Calcasieu, for the recovery of money representing taxes due to the par-

ties mentioned, aggregating, it was alleged, over $80,000, for which said Perkins had failed to account; and writs of attachment were issued, under which there were seized certain lands standing in the name of the principal defendant, valued at $6,326.50, and cash and other assets held for his account, individually or as collector, to an amount exceeding $37,000. The principal defendant, through a curator ad hoc, pleaded the general issue. The American Bonding Company deposited $19,000 in court, and set up (1) that it was entitled to retain $1,000 of the amount otherwise due, as representing a commission of 5 per cent. which the collector would have been entitled to retain upon an equal amount of taxes if collected and paid by him; and (2) that it was entitled to be subrogated, with respect to the amount paid, to the rights of the creditors, quoad the mortgage, upon the real estate seized, resulting from the registry of the bond. An intervention was filed, claiming on behalf of the minor children of the collector an interest in the real estate, and each of the plaintiffs intervened in the suits filed by the others in which attachments had been issued. Eventually, however, all the proceedings were, by consent, consolidated, and there was judgment in favor of the plaintiffs, respectively, and against the principal defendant, for amounts aggregating over $68,-000, and against the surety for $20,000; and, save as to the half interest in the real estate, or a portion of it, to which the title of the minors was recognized, the property seized, as also the $20,000 called for by the bond, was ordered to be applied (upon a basis apparently satisfactory) to the payment, pro tanto, of said judgment or judgments, there being still a considerable balance due thereon.

The claim of the bonding company for the commission was rejected, and its demand for subrogation was recognized only in so far as such subrogation may not affect the rights of the creditors to be paid in full. The bonding company alone has appealed.

### Opinion.

The only questions presented for the consideration of this court are those which have been stated, to wit: (1) Is the bonding company entitled to the commission claimed by it? (2) Is that company entitled to be subrogated to the plaintiff's rights quoad the mortgage resulting from the registry of the bond, to the prejudice of the unpaid balances due to the plaintiffs?

1. Act No. 170, p. 346, of 1898, by which the question first above stated is to be determined, provides (section 58, p. 375) that the tax collector—

"Shall be paid five per centum on all state and parish taxes collected by him and actually paid over," etc.; (section 79, p. 380) "* * * that if any tax collector fails to make a settlement provided for by law he shall forfeit the commission so allowed him." (Section 81, p. 381) "* * * And in case the securities are called on to make good any shortage of the collector the auditor is authorized to allow such securities, if they settle without suit, the same commission the collector would have received had the settlement been made by him."

It is not disputed that the surety in this case was willing to pay over the $19,000, but the amount was much less than the shortage of the collector; and, as he would have been entitled to no commission upon offering a partial settlement, neither is his surety entitled to a commission upon making such offer.

2. If to the whole amount realized under the attachments there be added the $20,000 called for by the bond, the total will fall short, by several thousands of dollars, of satisfying the demands of the plaintiffs against the defaulting collector; and the appellant surety proposes to increase this deficit by appropriating to itself, as the subrogee of the plaintiffs, whatever interest in the real estate seized may have been affected by the mortgage resulting from the registry of the bond; it being conceded that, upon the basis of this proposition, if the interest re-

ferred to should be worth $20,000, the surety would recoup itself entirely, although the plaintiffs might still be losers to that amount, or more, by reason of the failure of the collector to comply with the obligation to secure which, up to that amount, the bond was given. The argument in support of the proposition is pressed with much ability, but we think there is error in the conclusion reached, resulting from an ignoring of the purpose of appellant's contract, and of the law applicable thereto, as also of the principles of equity which underlie the idea or doctrine of subrogation, and from thereafter reasoning by analogy—at best, an unsafe method.

The purpose which the bond in question was intended to subserve may be gathered from the following language to be found in the act already quoted (Act No. 170 of 1898, § 6), to wit:

"The bond of the sheriff as ex officio tax collector shall be conditioned that the * * * tax collector shall diligently collect all licenses and all taxes listed and assessed in the parish, * * * shall faithfully and promptly pay into the state treasury all licenses and taxes collected by him, less his lawful commission, and shall do and perform such other duties as may be prescribed by law."

Act No. 52, p. 50, of 1880, which, in the respects now mentioned, seems to be still in force, provides that the amount of the bond to be given by the collector shall exceed by $1,000 the amount of the taxes levied according to the preceding assessment, "provided, that in no parish shall the bond exceed $20,000.00"; and it further provides that:

"Such bonds shall also be registered in the mortgage records of the several parishes where the principal obligor may own immovables. and, when so registered, shall operate, from and after the date of registry, as a mortgage, on all the real estate of the principal obligors therein, in favor of the state, parish and all persons interested."

It is clear from this that the collector is to give a bond to secure the faithful performance of all the duties imposed on him, including the duty of paying into the treas-

ury all the taxes collected by him; and whilst, as in this instance, it may happen that the amount of the bond is insufficient to meet the requirements of a particular case, the spirit and purpose of the contract (i. e., that the beneficiaries of the bond shall be held harmless, and that the surety shall stand in the shoes of the obligor) up to the amount specified, remain unaffected by that circumstance.

Bearing this in mind, there is certainly nothing in the law which for a moment suggests the idea that the mortgage resulting from the registry of a tax collector's bond was intended to inure to the benefit of the surety and to the prejudice of the beneficiary. It may be, and doubtless is, true that as a mortgage is a legal creation, with necessarily definite limits, it ceases to exist with the extinction of the obligation which it secures, and it may be, and doubtless is, true that, unless the rights of the parties be affected by other considerations, the rule thus stated is subject to the exception that, where the obligation is extinguished by one who is bound therefor, he becomes subrogated to the mortgage rights of the creditor quoad his co-obligor. But subrogation is essentially an equity, and it would be inequitable in the last degree that a surety who has bound himself, solidarily with the obligor, to hold the obligee of a bond harmless up to a certain amount should, upon the payment of such amount, be subrogated to the rights of the obligee against the obligor, with the result that he (the surety) sustains no loss, whilst the obligee becomes the loser in the very matter with respect to which the bond was intended to protect him.

"The doctrine of subrogation, derived from the civil law, eminently just, is adopted and enforced in the courts of equity." Southall v. Farish, 1 L. R. A. 641, note.

"Subrogation is the equity by which a person who is secondarily liable for a debt, and has paid the same, is put in the place of the creditor, so as to entitle him to make use of all the securities and remedies possessed by the creditor in order to enforce the right of exoneration as

against the principal debtor, or of contribution against others who are liable in the same rank with himself." Bispham, Eq. § 335.

"Subrogation, being the creature of equity, will not be permitted where it would work injustice to those having equal or superior equities." A. & E. Ency. of Law (2d Ed.) vol. 27, 204.

"It is generally stated by the authorities that the right of subrogation will not be enforced until the creditor or other person to whose place substitution is claimed has been fully paid." Id. 205.

Turning to the civil law, we find, in our own Code:

"Art. 2162. The subrogation established by the preceding articles takes place as well against the sureties as against the debtor. It cannot injure the creditor, since, if he has been paid but in part, he may exercise his right for what remains due, in preference to him from whom he has received only a partial payment."

In commenting upon the corresponding article (1252) of the Code Napoleon, Marcadé says:

"Notre article revient donc à dire que le paiement même formellement déclaré, fait avec subrogation, emporte jamais subrogation vis-à-vis du créancier, lorsqu'il n'est que partiel et n'éteint pas toute la créance. * * * La subrogation, c'est-à-dire, le droit pour celui qui a payé de réclamer pour sa portion les garanties qui appartenaient au créancier, n'existera, dans ce cas, que vis-à-vis de tous autres que ce créancier." Marcadé, vol. 4, p. 546.

And Rogron, commenting upon the same article, and by way of illustration, says:

"Ainsi l'on me devait 30,000 fr.; vous m'en avez donné 20,000, et je vous ai subrogé à mes droits: malgré cette subrogation, je vous primerai toujours pour le 10,000 fr. qui me restent dus, et vous ne pourrez exercer les droits que je vous ai cédé qu'après moi, par ce qu'en vous subrogeant à ma place, mon intention, bien certainement, n'a pas été que vous eussiez la préférence même sur moi." Rogron, Code Civil Expliqué, p. 1407.

The view thus expressed finds support in the decisions of this court in Davidson v. Carroll, Hoy & Co., 23 La. Ann. 108, and Gumbel & Co. v. Sheriff et al., 46 La. Ann. 1499, 16 South. 465, and, we think, should be applied in the instant case.

The judgment appealed from is therefore affirmed.

PROVOSTY, J., dissents.