### PEOPLES v. PEOPLES BROS., Inc.

(District Court, E. D. Pennsylvania. December 12, 1918.)

No. 1647.

1. SUBROGATION ⬤1—NATURE OF RIGHT—SUPERIOR EQUITIES.

The right of subrogation rests upon purely equitable grounds, and will not be enforced against superior equities.

2. SUBROGATION ⬤28—SURETY OF CONTRACTOR—CONDITIONS OF BOND.

The surety on the bond of a contractor, conditioned for payment of claims for labor and material, which on the contractor's insolvency paid the amount of its obligation into court, which paid only 65 per cent of claims of creditors secured by the bond, on completion of the contract by a receiver, was not entitled by subrogation to the amount due thereon until claims for labor and materials were paid in full.

In Equity. Suit by David Peoples against Peoples Bros., Incorporated. On exceptions to report of special master. Sustained in part.

Horace M. Schell, of Philadelphia, Pa., for receiver.

Edward Hopkinson, Jr., of Philadelphia, Pa., for American Surety Co.

Murdoch Kendrick, of Philadelphia, Pa., for Massachusetts Bonding & Ins. Co.

J. Wilson Bayard, of Philadelphia, Pa., for American Bridge Co.

THOMPSON, District Judge. On October 29, 1915, the city of Philadelphia, hereinafter called the city, and the Pennsylvania Railroad Company, hereinafter called the railroad, entered into a contract with the defendant Peoples Bros., Incorporated, hereinafter called the contractor, for the construction of a bridge on Fifty-Fourth street over the tracks of the Philadelphia, Baltimore & Washington Railroad for the sum of $37,000, of which the city was to pay $22,000 and the railroad $15,000.

On the same day, in pursuance of the ordinances of councils, the contractor, as principal, and the Massachusetts Bonding & Insurance Company, hereinafter called the surety, as surety, executed and delivered to the city a penal bond in the sum of $11,100, conditioned upon the payment by the contractor of all claims for labor performed or material furnished in the performance of the said contract.

Upon a creditors' bill, Robert W. Finletter was, on December 10, 1916, appointed receiver of Peoples Bros., Incorporated. The contractor having failed in the performance of its contract for the Fifty-Fourth street bridge, the receiver completed its construction at a total cost of $1,479.94. Claims for material supplied to the contractor in the construction of the bridge have been proved in the sum of $15,946.28.

Upon petition of the surety presented May 11, 1917, leave of court being given, the amount of its liability, namely, $11,100, was paid into court on April 19, 1918. Upon completion of the contract by the receiver, there was due to the contractor by the city $5,184, and by the railroad $4,632. These amounts were paid by the city and the railroad to the receiver.

The surety, on February 16, 1917, presented a petition praying that the receiver be ordered to pay the balance due by the city and the railroad, less the amount expended by the receiver in the completion of the contract, to the surety, upon the ground that it was subrogated to the rights of the contractor in that fund.

The issues raised by the petition of the surety and the several answers thereto were referred to a special master. The master, after deducting from the amount paid into court by the surety, $11,100, the costs and master's fee, amounting to $781, awards the balance, $10,310, pro rata to the materialmen, subject, as appears by the record, but not set out in the master's report, to the clerk's poundage. The dividend amounts to 64.8 per cent. After deduction of the cost of completion of the contract in the respective proportions the city and railroad were liable for under its terms from the sums paid the receiver by them, respectively, there remains of the amount paid by the city to the receiver a balance of $4,310.84, and of the amount paid by the railroad a balance of $4,025.22. The master awards out of the balance of each of these funds an allowance to the receiver, for services in completing the contract, of $250, a fee to counsel for the receiver of $250, and a fee to the master of $250. He awards the balance of $3,560.84 of the fund received from the city to the surety, and the balance of $3,275.22 of the fund received from the railroad to the receiver for the general creditors.

Exceptions have been filed on behalf of the surety to the failure of the master to award to it the fund received from the railroad, and to the awards of allowances to the receiver for his services in completing the contract, of fees to counsel for the receiver, and of fees to the master out of the funds claimed by the surety. Exceptions have been filed on behalf of the receiver and the American Bridge Company, a claimant for material, to the award to the surety of the balance of the sum received from the city.

The learned master held, under the authority of Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412, and Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547, that a right of subrogation arose as to the reserved fund retained by the city and paid to the receiver, in favor of the surety, by reason of its having paid into court for the payment of claims of the materialmen the full amount of its liability under its bond. The master appears to have overlooked a very important distinction between the facts in the Prairie Bank Case and the Henningsen Case and those in the case at bar.

In the Prairie Bank Case the dispute was between the surety, which had entirely completed the contract, and the bank, which claimed under an assignment by a contractor all moneys due by the government to him. So far as appears, there were no other claimants against the fund.

In the Henningsen Case the dispute was between the surety and a bank which held a similar assignment. The surety company had paid the claimants for labor and material in full under the provisions of a penal bond given to the United States under the provisions of Act Aug. 13, 1894, c. 280, 28 Stat. 278, to secure the payment of claims for labor and material. So far as appears, there were no other claimants upon the fund.

There was no dispute in either case that the claims of those protected by the surety's bond were satisfied in full. There could therefore be no doubt of the application of the principle of subrogation, and the question was as between the equities of one claiming by subrogation arising when the bond was given and one claiming under a subsequent assignment of the fund. The very important fact was present in each of those cases, which is essential to one of the fundamental propositions upon which the right of subrogation rests, namely, that the claim of the creditor protected by the surety's bond had been fully satisfied, while in the case at bar the indebtedness of the contractor to the materialman protected by the bond given to the city is not fully satisfied by the payment into court of the amount of the surety's liability, but these creditors have received out of that fund but 65 per cent. of their claims, and if the fund paid to the receiver by the city is awarded to the surety it will be to their prejudice.

[1] "Subrogation is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities or remedies which the creditors may hold as against the principal debtor and by the use of which the party paying may thus be made whole." Bispham's Equity (6th Ed.) p. 450.

It rests upon purely equitable grounds, and will not be enforced against superior equities. Unless the surety pays the debt in full, he is not entitled to subrogation, and until this is done the creditor will be left in full possession and control of the debt and the remedies for its enforcement.

It must not be enforced to the detriment of equal or superior equities existing in other parties, nor where its enforcement would operate to the prejudice or injury of the creditor, and cannot, therefore, be insisted upon until the creditor is fully paid and satisfied. Dering v. Earl of Winchelsea, 1 Leading Cases in Equity, 114; Kyner v. Kyner, 6 Watts (Pa.) 221; Bank v. Potius, 10 Watts (Pa.) 148; Hoover v. Epler, 52 Pa. 522; Allegheny National Bank's Appeal, 19 Wkly. Notes Cas. 78; Musgrave v. Dickson, 172 Pa. 629, 33 Atl. 705, 51 Am. St. Rep. 765.

[2] In the present case the creditors protected by the bond, namely, the materialmen, have not been paid in full. They are entitled as creditors of the contractor to look for payment to the fund paid by the city and the railroad to the receiver upon completion of the contract, and, until they are paid in full, the surety has no equity superior to theirs. The surety is merely a general creditor of Peoples Bros. to the extent of the amount which it paid into court, thus relieving the contractor, its principal, to that extent. It follows that the master properly awarded to the receiver the sum received from the railroad for the general creditors, but that he erred in awarding the sum received from the city to the surety. This sum should also have been awarded to the receiver for general creditors.

There is no apparent reason for allowances to the receiver for his services and fee to his counsel at this time. These claims may more properly be considered upon the final audit of the receiver's account.

The first, second, fifth, sixth, seventh, and eighth exceptions of the Massachusetts Bonding & Insurance Company are dismissed, and its third and fourth exceptions are sustained, in so far as they apply to the allowances to the receiver and his counsel for services and fee, respectively, without prejudice to the presentation of such claims at the audit of the receiver's accounts, and in all other respects the said exceptions are dismissed.

The first exception on behalf of the receiver is dismissed, as its application to the master's report is not apparent. The second exception is sustained. The third, fourth, fifth, and sixth exceptions are sustained, except in so far as they relate to the master's fee, and in that respect are overruled.

The exceptions filed on behalf of the American Bridge Company are sustained.

It is ordered that the awards made by the learned special master be modified, in accordance with this opinion, and in other respects the report be confirmed.