AUGUST KRUEGER, Respondent, v. JOHN DULAS, and Magdalen A. Dulas, H. S. Posey, and THE STUTSMAN COUNTY BANK OF COURTENAY, NORTH DAKOTA, Appellant.

(191 N. W. 1014.)

**Evidence — parol evidence to show status of notes and lien of security under mortgage in foreclosure action held admissible.**

Where notes for the purchase price of lands due the vendor and for commission due a broker were secured by a mortgage made to the vendor, and where, thereafter, the notes representing the commission were transferred by the vendor to the broker by an indorsement thereupon without recourse pursuant to an extrinsic parol agreement that such commission notes and the lien of their security should be inferior to that of the vendor, it is *held*, for reasons stated in the opinion, that parol evidence was properly received concerning such extrinsic agreement and that the same did not serve to vary or contradict the contract of indorsement.

Opinion filed January 29, 1923.

Evidence, 22 C. J. § 1669 p. 1255 n. 52.

Action in District Court, Stutsman County, *Nuessle,* J., to foreclose a mortgage upon real estate.

Defendant bank has appealed from a judgment awarding a preference lien to plaintiff's notes.

Affirmed.

*A. W. Aylmer* and *A. L. Aylmer,* for appellants.

The broker is entitled to commission from landowner, when he furnishes purchaser. Young v. Ruhwedel (Kan.) 96 S. W. 228.

The person employing the broker is liable for the commission. 9 C. J. 581, 585, note 90; 3 L.R.A.(N.S.) 545–580.

---

Note.—On admissibility of parol evidence to contradict or vary the terms of a prior and contemporary parol agreement, see note in 17 A.L.R. 273; 10 R. C. L. 1036; 2 R. C. L. Supp. 1143; 4 R. C. L. Supp. 687; 5 R. C. L. Supp. 584.

On priority as between holders of different notes secured by the same mortgage, see notes in 24 L.R.A. 800, and 42 L.R.A.(N.S.) 183.

"Parol agreement to the effect that seller of land, receiving several notes, and giving some to brokers, should have a prior superior right to the proceeds realized on foreclosure sale of premises, could not be shown in a foreclosure proceeding, because evidence of it would in effect vary and contradict the notes and mortgage." Chaffee v. Clark, (Wis.) 177 N. W. 609.

Parol evidence is not admissible to show a verbal agreement made at the time of the assignment, giving the bond priority, when no such priority is included in, or inferable from, the terms expressed in the assignment. Hancock's Appeal, 34 Pa. 155, referred to in 42 L.R.A. (N.S.) 187.

The law will not tolerate the admission of parol testimony to show a contemporaneous agreement, to vary a writing. Bank v. Lang (N. D.) 49 N. W. 414; First Nat. Bank v. Prior (N. D.) 86 N. W. 362.

Neither the notes nor mortgage contain anything to indicate that the instalment notes did not have equal rights to the security. The legal effect of such a mortgage is to give such notes equal rights, and if the security is insufficient to pay all in case of foreclosure, then the notes pro rata. Lawson v. Warren, 42 L.R.A.(N.S.) 183; Borden v. McNamara (N. D.) 127 N. W. 104; (S. D.) 63 N. W. 548.

But as between the original holder of all the notes, and one of his transferees, the transferee has a superior lien. Lawson v. Warren, 42 L.R.A.(N.S.) 183; 27 Cyc. 1304, note 52.

The legal effect of a written instrument cannot be varied by parol. 2 Elliott, Contr. p. 938, § 1628, note 86; 22 C. J. 1075, note 51, 1077, note 66; Millard v. Millard (Mich.) 180 N. W. 429; Clendening v. Bank (N. D.) 94 N. W. 901.

Security follows note. 2 Jones, Mortg. pp. 291, 293, note 44; 27 Cyc. 1287, note 33, 1289, note 35; Comp. Laws 1913, § 6733; Goodwin v. Cunningham (Neb.) 74 N. W. 315; Brynjolfson v. Osthus (N. D.) 96 N. W. 261.

Mortgage passes by operation of law. 27 C. J. 230, note 45.

"The indorsement, being in writing, the contract implied must be treated in all its terms as a written contract invulnerable to attack by proof of a contemporaneous oral agreement of different tenor." Gate City Bank v. Schmidt, 152 S. W. 101; Schmitz v. Hawkeye Co. (S. D.) 67 N. W. 618; 3 Jones, Ev. p. 413, § 497.

Indorsement is a well-defined contract, 48 N. W. 327. Parol evidence is inadmissible to show that an indorsement is not to have its ordinary effect. Gilltner v. Quirk (Minn.) 155 N. W. 760; Ferger v. Sanitary Farm Dairies (Minn.) 178 N. W. 501; 22 C. J. 1294, note 90; Ugland v. Farmers Bank (N. D.) 137 N. W. 572; 3 Jones, Ev. p. 220, § 449, notes 5, 6; Blumer v. Schmidt (Ia.) 146 N. W. 751; Current v. Muir (Minn.) 108 N. W. 870; First Nat. Bank v. Kelley (N. D.) 152 N. W. 125; Schulz v. Plankington, 33 Am. Rep. 290.

While the true consideration may sometimes be shown, it cannot be done to contradict the express terms of a written instrument, or the legal effect thereof. 22 C. J. 1170, note 25; 2 Elliott, Contr. p. 937, note 85; Schulz v. Plankington Bank, 33 Am. St. Rep. 290.

*Fowler, Green & Wattam,* for respondent.

"No court has hesitated to modify, abandon, or wholly reverse the rule it has adopted, where intervening equities demand it." Lawson v. Warren (Okla.) 42 L.R.A.(N.S.) 183; Jones, Mortg. 7th ed. § 822-a; Grattan v. Wiggins, 23 Cal. 16; Bank of England v. Tarleton, 23 Miss. 173; Morgan v. Kline (Iowa) 42 N. W. 558; Noyes v. White, 9 Kan. 640; Savings Deposit Bank v. Ellingson, 27 N. D. 516; Preston v. Morsman, 75 Neb. 358, 106 N. W. 320; Romberg v. McCormick, 194 Ill. 265, 62 N. E. 539; Cullom v. Erwin, 4 Ala. 452.

"The simple assignment of the notes does not change the mortgage and make it any less security for any of the notes than it was before the assignment. The mortgage security in following the transfer of the notes does not pass by the assignment any farther than it was an incident at the time the transfer was made." Lawson v. Warren, supra. 22 C. J. 1212, 1665, § 1615; Erickson v. Wiper, 33 N. D. 195.

"Where a writing, although embodying an agreement is manifestly incomplete, and is not intended by the parties to exhibit the whole agreement, but only to define some of its terms, the writing is conclusive as far as it goes. But such parts of the actual contract, as are not embraced within its scope, may be established by parol." Jones, Ev. 2d ed. § 440.

"Where two mortgages are executed to different mortgagees, who agree among themselves as to which one should have priority, the agreement for priority is collateral to, and not merged in the mortgage; and nothing having been expressed in the mortgages as to their priority

parol evidence is properly received to establish the agreement." Collier v. Miller, 62 Hun, 99, 16 N. Y. Supp. 633, affirmed in 137 N. Y. 332.

"Where a mortgage and judgment are entered the same day, and hence presumed to be of equal rank, and therefore payable pro rata, an agreement between the parties changing this general rule and giving precedence to one or the other, may be proved by parol." Maze v. Burke, 12 Phila. (Pa.) 335.

"Where there was a collateral oral agreement between indorser and indorsee and the indorsed notes have passed to bona fide purchasers without notice, and the security is prorated between such holders and the payee to the latter's loss, he should be given a personal judgment as against his indorsee." Green v. Morris (Miss.) 78 So. 550.

## Statement.

BRONSON, Ch. J. This is an action to foreclose a mortgage upon real estate. The defendant bank has appealed from the judgment and has demanded trial de novo. The facts are: The plaintiff was the owner of some 466 acres of farm land in Stutsman county, North Dakota. In August, 1919, he gave to defendant bank an exclusive contract to sell this land. This contract stipulated a price of $43 per acre to plaintiff and, as commission to defendant bank, the amount received over such price. Also, that, if the land were sold on time, $500 to be paid in cash; $1,500 to be paid on March 1st, 1920; $1,771.29 on November 15th, 1920; and, $1,800 or more, each year thereafter, for a period of ten years at 6 per cent. Further, that plaintiff wanted a chattel mortgage on crops to protect the payments.

In the fall of 1919, defendant bank sold to defendant Dulas the land for a consideration of about $48 per acre. $500 in cash was then paid. In the spring of 1920, a deed and mortgage of the lands was presented to plaintiff by the cashier of the defendant bank. Plaintiff objected to the inclusion of commission notes in the mortgage. The cashier explained that plaintiff would not have to pay them; that the purchaser would pay them. The parties went to a local bank in Buffalo. There, in accordance with the testimony of plaintiff and the cashier of that bank, an understanding was had that no chattel mortgage should be

49 N. D.—35.

given, but that defendant bank would guarantee a note for $1,771.29; that plaintiff, upon inclusion of the commission notes in the mortgage, should receive his money first and, if after he were paid and the bank desired an assignment of such mortgage, plaintiff would make such assignment; that the notes of the bank for commission should be subrogated to the rights of plaintiff and that if plaintiff's notes were not paid defendant bank would not receive any commission. Accordingly, plaintiff made a deed to defendant Dulas, and defendant Dulas and his wife made to plaintiff a mortgage upon the land securing fifteen notes payable to plaintiff. Five of the notes were commission notes, viz.: One note for $450 due November 15th, 1920; three notes for $421.29 due, respectively, November 15th, 1921, November 15th, 1922, and November 15th, 1923; one note for $117.58 due November 15th, 1924. One note for $1,771.29 was made payable November 15th, 1920. The balance of the purchase price was represented by payments of notes of $1,800 or approximately that amount, falling due in consecutive years commencing November 15th, 1921, and ending November 15th, 1929. Total amount of the mortgage was $19,881.92. Plaintiff received in cash $1,500 additional; defendant bank, $500 in cash upon its commission. Defendant bank indorsed upon the note for $1,771.29 a guaranty of payment. Plaintiff then, without recourse, indorsed the commission notes to defendant bank. This mortgage to plaintiff was recorded in April, 1920. Later, defendant bank collected one commission note for $450. It collected from defendant Dulas $467.23 which was credited on the guaranteed note. It took up this guaranteed note from plaintiff and issued to him a certificate of deposit therefor. With the exception of some interest these are the only payments made to plaintiff on the mortgaged indebtedness. Some correspondence was had between the parties concerning an assignment of the mortgage. On May 15th, 1920, the cashier of defendant bank wrote plaintiff requesting him to sign an agreement which plaintiff stated he would give in regard to the notes which he had signed over to the bank. This agreement provided that plaintiff should assign the mortgage to defendant bank upon the payment of the notes and interest, provided that the bank still held unpaid notes which were also secured by such mortgage and which had been assigned and delivered to it without recourse by plaintiff. Plaintiff made objection to this agreement and never signed it.

This action was instituted in January, 1922, by plaintiff to foreclose the mortgage for the sum of $16,279.18 with interest. Service by publication was secured against defendant Dulas and his wife. They made no appearance. Defendant bank answered alleging the transfer of the notes by plaintiff to it, and the equitable assignment of the mortgage thereby and demanding that the lien of defendant bank be made prior and superior to plaintiff's lien in the mortgage. The trial court found, among other things, that plaintiff, as consideration for the transfer of the notes to defendant bank, made an oral agreement that the commission notes should be deferred in payment and as to security until the amounts due to plaintiff should have been fully discharged; that defendant bank duly transferred one of the commission notes to a third party; that when the sale was consummated plaintiff waived a crop mortgage provision upon securing indorsement and guaranty of the note for $1,771.29 by defendant bank and upon the understanding that defendant's rights upon such note should be subsequent and inferior to plaintiff's rights; that, when said note matured, defendant bank, through its agreement, took up said note and paid plaintiff the amount due thereon. Accordingly, the court ordered judgment of foreclosure, awarding a preference lien to plaintiff for the amount of the indebtedness, including interest and taxes paid, subject only to a prior lien for the commission notes sold to a third party. Pursuant to such findings judgment was entered.

It is the principal contention of the defendant bank that the oral agreement, if made to defer the lien of its security, was without consideration and inadmissible because it served to vary the terms and the legal effect of a written instrument; that, as a matter of law, the indorsement of the commission notes by plaintiff to defendant bank carried as an incident thereto a pro rata assignment which granted to the transferee a superior lien.

## Decision.

The issue upon this appeal concerns alone the commission notes held by defendant bank. No questions are presented concerning the priority of the commission note transferred to an innocent purchaser, or the inferiority of the note guaranteed by defendant bank.

We are of the opinion that the findings of the trial court, concerning the actual contract made between the parties, should be sustained.

Accordingly, the whole transaction between the parties consisted of an agreement that plaintiff should receive the purchase moneys owing to him and should have a preference lien through the mortgage to secure the same. This agreement was consummated and evidenced through commission notes payable to plaintiff, secured by the mortgage, and transferred by plaintiff to defendant bank, to whom they were due, and secured by lien of the mortgage running to plaintiff. The oral agreement and the letter of the defendant bank further evidenced this agreement, that plaintiff should have a preference lien for his purchase money notes.

Did this oral agreement serve to vary the terms of the contract of endorsement upon the commission notes as made by plaintiff and thus violate the rule against the admission of parol evidence for such purpose?

It is evident that negotiable instruments were executed in this case for purposes of negotiability. That plaintiff made his indorsement to defendant bank for purposes of negotiability. It has been said that a negotiable note is a courier without luggage. Overton v. Tyler, 3 Pa. St. 346, 45 Am. Dec. 645. Its contract obligations, through the language of negotiability, attach by legal prescription, impliedly. It *must* contain certain indicia to establish its status and, equally, *must not* contain certain other things. 4 Wigmore, Ev. § 2443. It is well established that by a special agreement, even by parol, the parties to a negotiable instrument may alter or change the application or effect of certain implied obligations contained in a note so far as the same affects themselves. 4 Wigmore, Ev. § 2444; 1 Dan. Neg. Inst. 5th ed. § 6717. Thus, the expressed terms of the obligation in a document, such as the mode, the time, or the amount of payment, etc., may not be varied by an extrinsic agreement to avoid their enforcement. But, concerning the implied terms, an extrinsic agreement can be used where the transaction in hand, as a whole, preserves, for one purpose, the form of negotiability and, for another or separate part of the transaction, presents a different contract, feasible and consistent. 4 Wigmore, Ev. § 2444. See 8 C. J. 1033; 22 C. J. 1089.

Plaintiff made a qualified indorsement upon the commission notes.

Thereupon certain implied obligations were annexed by law. He became a mere assignor of the title to the notes. Comp. Laws, 1913, § 6923. Thereupon he impliedly warranted that the instrument was genuine and in all respects what it purported to be; that he had good title; and all prior parties had capacity to contract; that he had no knowledge of any fact which would impair the validity of the instrument or render it valueless. Comp. Laws, 1913, § 6950. See note in Ann. Cas. 1912A, 923.

Furthermore, by operation of law, in the absence of any agreement to the contrary, the transfer of the commission notes carried with them their security. Comp. Laws, 1913, § 6733. See note in 2 L.R.A. (N.S.) 183. No formal assignment of the mortgage was necessary so to do. Brynjolfson v. Osthus, 12 N. D. 42, 49, 96 N. W. 261.

However, it was competent for the parties, by an extrinsic agreement, to assign this mortgage security and to define the relation that would exist between them by virtue thereof. 27 Cyc. 1304. 1 Jones, Mortg. §§ 817, 821.

The extrinsic agreement between the parties in the instant case served that purpose. There is no question that an assignment of the security took place. The question is, Did it take place, pursuant to the rule applicable where an assignment of the debt occurs, or pursuant to the extrinsic agreement of the parties in connection with the transfer of the notes?

An antecedent agreement was made between the parties pursuant to which the commission notes were indorsed in order to effectuate this agreement, transfer title to the commission notes to the defendant bank, and, otherwise, fix the rights between the parties pursuant thereto. In our opinion proof was properly received concerning this extrinsic agreement. Such proof did not violate nor vary any of the implied obligations of plaintiff's contract of qualified indorsement. The enforcement of this extrinsic agreement is consistent with plaintiff's qualified indorsement. If defendant's contention should be sustained, plaintiff's indorsement might be given the effect of a general indorsement. Gumbel v. Boyer, 46 La. Ann. 1499, 16 So. 466. Further, under the circumstances, the exclusion of such extrinsic agreement might well serve purposes of an attempt to enforce a fraud upon plaintiff's rights pursuant to the equities arising out of an antecedent transaction. See Dick-

inson v. Burke, 8 N. D. 118, 120, 77 N. W. 279.   The judgment is affirmed with costs.

BIRDZELL, JOHNSON, and CHRISTIANSON, JJ., and COOLEY, Dist. J., concur.

Mr. Justice NUESSLE, disqualified, did not participate, Honorable CHAS. M. COOLEY, District Judge, sitting in his stead.