**MARYLAND CASUALTY CO. v. FOUTS**
(LACY, State Treasurer of North
Carolina, Intervener).

(Circuit Court of Appeals, Fourth Circuit.
January 12, 1926.)

No. 2404.

Subrogation ⬥=28—Surety cannot be subro-
gated to rights of obligee, though paying pen-
alty of bond, where obligee's indebtedness
was not satisfied in full.

Surety on bond indemnifying obligee against
loss for all money deposited in bank cannot be
subrogated to right of obligee against default-
ing bank, though paying penalty of bond to obli-
gee, where obligee's indebtedness was not satis-
fied in full.

Appeal from the District Court of the
United States for the Western District of
North Carolina, at Greensboro; Edwin Y.
Webb, Judge.

Suit by the Maryland Casualty Company
against J. E. Fouts, receiver of the People's
National Bank of Salisbury, in which B. R.
Lacy, Treasurer of the State of North Car-
olina intervened. From the decree, plain-
tiff appeals. Affirmed.

Kerr Craige, of Salisbury, N. C., and
Sidney S. Alderman, of Greensboro, N. C.
(George W. Dexter, of Baltimore, Md., Bur-
ton Craige, of Winston-Salem, N. C., and
Wm. P. Bynum and F. P. Hobgood, Jr.,
both of Greensboro, N. C., on the brief), for
appellant.

James S. Manning, of Raleigh, N. C.,
Dennis G. Brummitt, of Oxford, N. C., and
Hayden Clement and John L. Rendleman,
both of Salisbury, N. C. (Frank Nash and
John H. Manning, both of Raleigh, N. C.,
on the brief), for appellees.

Before WADDILL and ROSE, Circuit
Judges, and WATKINS, District Judge.

WADDILL, Circuit Judge. This is an
appeal from a decree of the United States
District Court for the Western District of
North Carolina, in a case in equity pending
therein, in which the appellant was plaintiff
and the appellees defendants. The suit was
originally brought by the appellant, the
Maryland Casualty Company, against the
receiver of the People's National Bank of
Salisbury, and subsequent to its institution
the treasurer of the state of North Carolina
was, upon his petition, permitted to inter-
vene as a defendant, and he did appear and
file his answer to the plaintiff's bill.

The appellant, the Maryland Casualty
Company, executed, as surety for the Peo-
ple's National Bank of Salisbury aforesaid,

a depository bond to B. R. Lacy, treasurer
of the state of North Carolina, in the sum
of $50,000. The bond was dated the 10th
of January, 1922, and was for one year, and
it was renewed and extended from the 10th
of January, 1923, to the 10th of January,
1924. On the 8th of June, 1923, the Peo-
ple's National Bank of Salisbury was closed
by the Comptroller of the Currency, and J.
E. Fouts appointed its receiver. At the
time of the failure of the bank, it was in-
debted to B. R. Lacy, the state treasurer, in
the sum of $89,579.14. The bond executed
by the defaulting bank as principal, with
the Maryland Casualty Company as surety,
contained these provisions:

"Whereas, in the month of —— the
above bound People's National Bank, Salis-
bury, N. C., was designated by the treasur-
er of the state of North Carolina one of the
depositories of the funds belonging to the
state of North Carolina:

"Now, the condition of the above obliga-
tion is such that if the above bound People's
National Bank, Salisbury, N. C., shall well
and faithfully pay over and upon demand
of said Benjamin R. Lacy, or his legal rep-
resentative, all moneys belonging to said
Benjamin R. Lacy, personally or as treas-
urer, or to those to whom he may from time
to time, personally or as treasurer, by check
or draft or bill of exchange, direct payment
to be made, all moneys which said Benja-
min R. Lacy, may, either personally or as
treasurer of the state of North Carolina, de-
posit with said People's National Bank,
Salisbury, N. C., which may in any manner
come into its custody or possession while act-
ing as said state depository, or which may
be received by it by virtue of its being said
state depository, then this obligation to be
void; otherwise, to remain in full force and
effect."

The treasurer of the state of North Caro-
lina duly notified the appellant surety com-
pany of the failure of the People's National
Bank of Salisbury, and called upon that
company to make good its liability under the
depository bond aforesaid to the state. On
the 9th of May, 1924, approximately 12
months after the failure of the bank, the
surety company did pay the treasurer of the
state of North Carolina the sum of $50,000,
the penal amount of its bond. The said
amount was paid by appellant without waiv-
ing any of its rights under the bond, and
expressly reserving its right to hold the Peo-
ple's National Bank of Salisbury under an
agreement between the bank and it for the
reimbursement of any loss sustained by the

surety company under the bond. It appeared that, at the time the Maryland Casualty Company executed the bond of $50,000 to B. R. Lacy, state treasurer, the People's National Bank of Salisbury, entered into an agreement with the casualty company in connection with the application for, and execution of, said depository bond, the second provision of which agreement is as follows:

"Second. That said applicant shall and will at all times indemnify, and keep indemnified, and save harmless the said company from and against any and all liability asserted against said company, and from and against all loss, liability, costs, damages, charges, counsel fees, and expenses whatsoever which said company shall or may for any cause, at any time, sustain, incur, or be put to, for, or by reason or in consequence of said company's having executed said bond, and said applicant further covenants and agrees to pay to said company or its representatives all damages which said company or its representatives shall become liable for, by reason of said bond, before said company or its representatives shall be compelled to pay the same, any sum so paid, however, to be applied to the payment of such damages. * * *"

The appellant, plaintiff below, alleged: (1) That when it paid to the state treasurer of North Carolina $50,000 it was entitled to prove its claim for that sum. (2) That it was subrogated by reason of the payment of $50,000 to the claim of the state treasurer of North Carolina to that amount against the bank and its assets. (3) That it was entitled to dividends as any other creditor of the bank upon the $50,000. (4) That the excess of the claim of the state treasurer over $50,000, to wit, $39,579.14, and interest upon it, constituted a preferred claim upon the assets of the bank, and that the state treasurer was entitled to the payment of said amount as a preferred claim, because it constituted a trust fund due to the state, and that appellant was entitled to all dividends declared on the $50,000 paid by it to the state treasurer. On the propositions thus submitted the judge of the District Court decreed as follows:

"That the plaintiff, Maryland Casualty Company, is not entitled to receive any dividends from the defendant, J. E. Fouts, receiver of the People's National Bank of Salisbury, until intervener, B. R. Lacy, treasurer of the state of North Carolina, has received his entire deposit, and that the said plaintiff, Maryland Casualty Company, after payment has been made to the said B. R.

Lacy, treasurer of the state of North Carolina, of the full amount of his deposit, with interest, is entitled to be subrogated to the rights of said state treasurer to, and to receive from the said J. E. Fouts, receiver, such additional dividends as may be declared by him upon the sum of $50,000, penalty of the bond executed by the Maryland Casualty Company and the amount paid by it thereon to the state treasurer. * * *"

" * * * That the plaintiff is not entitled to recover of the defendant, J. E. Fouts, receiver of the People's National Bank of Salisbury, on its indemnity agreement with the said bank, and that the said Maryland Casualty Company is only entitled to subrogation to the rights of B. R. Lacy, treasurer of the state of North Carolina, as hereinbefore set forth."

" * * * That the receiver of said bank, to wit, J. E. Fouts, pay to the said intervener, B. R. Lacy, treasurer of the state of North Carolina, the full sum of 20 per cent. dividends now declared by him as such receiver upon the sum of $89,579.14."

The court thereupon vacated a temporary restraining order enjoining the payment to the treasurer of the state of the amount of said 20 per cent. dividend, and ordered the same to be paid. From this decree the appeal in this case is taken.

While the assignments of error are quite numerous, they relate almost entirely to the questions (1) whether the appellant, the Maryland Casualty Company, should be paid dividends upon the sum of $50,000 paid by it under its bond of indemnity for said amount given in behalf of the state until the entire sum due the state, to wit, $39,579.14, in excess of the penalty of such bond, is fully paid; (2) whether, having paid the penal amount of the bond to the state treasurer, the appellant should not be subrogated to the rights of the state, and paid its dividends upon the amount thus paid by it in the distribution of the assets of the insolvent bank, notwithstanding the fact that the bank's indebtedness was not paid in full, and that the amount thereof exceeded the indemnity bond by $39,579.14; (3) whether the deposit of the state of North Carolina in excess of the security taken by its treasurer therefor should not have been held to be a trust fund, and paid directly as such to the state.

The determination of appellant's rights and liabilities depends upon the effect and meaning of the undertaking given by it to indemnify the state on account of its money deposited in the bank, and the agreement of

the bank with the appellant surety company to indemnify it on account of the indemnity bond.

The right of subrogation for the amount paid by appellant to the state depends upon whether the sum paid was in full of the liability on the indemnity bond, or only on account thereof. If appellant was not lawfully entitled, out of the general assets of the defaulting bank, to be substituted to the rights of the state, whose indebtedness it paid, under its indemnity bond, to the extent of $50,000, then no right of subrogation existed in its behalf. To allow the appellant to assert such indebtedness, based upon its alleged claim as a creditor for the amount paid by it under its bond of indemnity to the state, and claimed to be in full of such liability, would be to permit the assertion of a claim in behalf of a guarantor against those it undertook to indemnify, in advance of the latter being paid in full the amount due them.

The penalty of the bond in this case, it is true, was $50,000, and, subsequent to the bank's failure, the amount of the penalty was paid by the surety; but the whole obligation to the state was by no means extinguished. On the contrary, there remained a balance of $39,579.14 due. The condition of the indemnity bond was to pay upon demand all money deposited in said bank, no limitation in amount being placed thereon, as set forth in full in the provision of the bond hereinbefore given. Manifestly, the surety therein could not assert a claim, either by way of subrogation or otherwise, on account of what it saw fit to pay on its bond indemnity, as an admitted liability, leaving unpaid such portions thereof as it saw fit not to settle.

The law applicable to this case is well settled, and when applied to the facts, concerning which there is little or no dispute, there can be no serious doubt as to what the outcome should be. The appellant, plaintiff in the District Court, is asking equitable relief, in that it may be, by way of subrogation, placed in the position of one whose indebtedness it paid, under an indemnity bond executed by it to the Bank of Salisbury to cover any indebtedness of that bank to the state.

The very essence of the right of subrogation, by one in the position of the appellant, is that the debt on account of which the indemnity was given, has been paid by the one setting up the equity. As long as the undertaking on account of which the security was given remains unpaid, in whole or

in part, the one giving the indemnity cannot invoke the aid of a court of equity to save it from the consequence of having to make payments on account of the obligation it gave, by decreeing to it dividends from the estate of the insolvent bank, and leaving the debts of such institution indemnified against unpaid. To allow this to be done would operate most unfairly against the state, whose debt was secured, and hence shows why the right of subrogation in such circumstances as in this case cannot be considered. The doctrine sought to be availed of rests upon purely equitable principles. The fact of the indebtedness, on account of which the surety was given, not having been paid in full, alone requires the denial of the relief prayed for, as the right of subrogation cannot be availed of to collect an indebtedness by one himself liable for the debt, and which obligation he has not met. The decisions of the courts of last resort, federal and state, and the text writers of the highest standing, have given full and frequent consideration to this subject, and with one accord they sustain the views herein given.

In United States v. National Surety Co., 41 S. Ct. 29, 30, 254 U. S. 73, 76 (65 L. Ed. 143), Mr. Justice Brandeis, speaking for the Supreme Court, said:

"* * * While the priority given the surety by the statute attaches as soon as the obligation upon the bond is discharged, it cannot ripen into enjoyment unless or until the whole debt due the United States is satisfied. This result is in harmony with a familiar rule of the law of subrogation under which a surety liable only for part of the debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied." Sheldon on Subrogation (2d Ed.) § 127; Pomeroy, Equity Jurisprudence (4th Ed.) § 2350; 25 R. C. L. 1318; Peoples v. Peoples Bros. (D. C.) 254 F. 489, 491, 492; United States Fidelity & Guaranty Co. v. Union Bank & Trust Co., 228 F. 448, 455, 143 C. C. A. 30; National Bank of Commerce v. Rockefeller, 174 F. 22, 28, 98 C. C. A. 8.

In United States Fidelity & Guaranty Co. v. Union Bank & Trust Co., 228 F. 448, 455, 143 C. C. A. 30, 37, supra, the Circuit Court of Appeals of the Sixth Circuit, speaking through Judge Denison, said:

"* * * The right of a surety on a bond to be subrogated for the obligee in a right of action against one wrongfully causing the liability is founded on payment by the surety to the obligee, and it does not

come into existence, except upon full payment of the loss indemnified against. This is because subrogation is of an equitable character, and the surety cannot be permitted to take away from the obligee, to the latter's prejudice, securities or rights in which he is still beneficially interested."

In Peoples v. Peoples Bros. (D. C.) 254 F. 489, 491, 492, supra, a decision by Judge Thompson, of the United States District Court for the Eastern District of Pennsylvania, will be found an interesting discussion of the authorities on this subject. He reviewed the two cases in the United States Supreme Court of Prairie State Bank v. United States, 17 S. Ct. 142, 164 U. S. 227, 41 L. Ed. 412, and Henningsen v. U. S. Fidelity & Guaranty Co., 28 S. Ct. 389, 208 U. S. 404, 52 L. Ed. 547, and, after demonstrating that in both of the cases the entire indebtedness arising under the obligation of indemnity had been fully paid and that hence the right of subrogation existed, said:

"There was no dispute in either case that the claims of those protected by the surety's bond were satisfied in full. There could therefore be no doubt of the application of the principle of subrogation, and the question was as between the equities of one claiming by subrogation arising when the bond was given and one claiming under a subsequent assignment of the fund. The very important fact was present in each of those cases, which is essential to one of the fundamental propositions upon which the right of subrogation rests, namely, that the claim of the creditor protected by the surety's bond had been fully satisfied, while in the case at bar the indebtedness of the contractor to the materialman protected by the bond given to the city is not fully satisfied by the payment into court of the amount of the surety's liability, but these creditors have received out of that fund but 65 per cent. of their claims, and if the fund paid to the receiver by the city is awarded to the surety it will be to their prejudice.

" 'Subrogation is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities or remedies which the creditors may hold as against the principal debtor and by the use of which the party paying may thus be made whole.' Bispham's Equity (6th Ed.) p. 450. It rests upon purely equitable grounds, and will not be enforced against superior equities. Unless the surety pays the debt in full, he is not entitled to subrogation, and until this is done the creditor will be left in full possession and control of the debt and the remedies for its enforcement. It must not be enforced to the detriment of equal or superior equities existing in other parties, nor where its enforcement would operate to the prejudice or injury of the creditor, and cannot, therefore, be insisted upon until the creditor is fully paid and satisfied,"

—citing the following cases: Dering v. Earl of Winchelsea, 1 Cox, 318, 1 Leading Cases in Equity, 114; Kyner v. Kyner, 6 Watts (Pa.) 221; Bank v. Potius, 10 Watts (Pa.) 148; Hoover v. Epler, 52 Pa. 522; Alleghany National Bank's Appeal (Pa.) 7 A. 788; Musgrave v. Dickson, 33 A. 705, 172 Pa. 629, 51 Am. St. Rep. 765—to which may be added: Columbia Finance, etc., Co. v. Ky. Un. R. Co., 60 F. 794, 9 C. C. A. 264; N. J. Mid. R. Co. v. Wortendyke, 27 N. J. Eq. 658; Board of Health v. Teutonia Bank & Trust Co., 68 So. 748, 137 La. 422, Ann. Cas. 1916B, 1251; State ex rel. Moore v. Perkins, 38 So. 196, 114 La. 302; Commissioner of Banking v. Chelsea Sav. Bank, 125 N. W. 424, 127 N. W. 351, 161 Mich. 691; Buffalo German Ins. Co. v. Title Guaranty & Trust Co., 99 N. Y. S. 883, 51 Misc. Rep. 267.

Considering the question presented, as to forfeiture, in behalf of the state, of all of its moneys deposited in the Salisbury bank, in excess of the penalty of the surety bond executed to indemnify the state: Manifestly, appellant has no right to have imposed upon others a burden such as would follow from treating as forfeited all sums so paid into the bank over and above $50,000, the penal obligation of the indemnity bond given for the state's protection. Appellant's position is purely contractual, and until it has met its liability, and the state has been paid in full, as well for the excess deposits of $39,579.14, as for the penal amount of the indemnity bond, it has no right, by subrogation or otherwise, in a case like the present one, to call upon others to share its burdens.

Counsel for appellant, as well as for the receiver of the defunct bank, have cited an array of authorities in support of the able and interesting arguments made by them, respectively. While we have given much thought and consideration to all that has been said, and made a careful examination of the authorities cited, we do not feel that they lead to a conclusion other than as stated herein. The decree of the District Court is plainly right, and should be affirmed, with costs.

Affirmed.