UNITED STATES FIDELITY AND GUARANTY COMPANY, Respondent, *v.* CARNEGIE TRUST COMPANY, Appellant.

First Department, March 30, 1917.

Bankruptcy — agreement by depository of bankrupt estates to indemnify surety company for loss under statutory bond — subrogation — when surety having partially paid creditors of bankrupt may assert claim for amount of payment against depository.

The defendant trust company, having been designated as a depository for the money of bankrupt estates, the plaintiff gave to the defendant the bond required by the statute conditioned that the defendant should pay over all moneys of bankrupt estates deposited with it as required by the statutes or decrees of the court. But the defendant, on its part, agreed in writing to indemnify the plaintiff and reimburse it for all moneys it might be obliged to pay by reason of the execution of the bond, and agreed that the plaintiff might look to the property of the depository for payment and be subrogated to any right or remedy which it might otherwise have acquired, and have all the rights of an individual surety acting without compensation. Thereafter the State Superintendent of Banks took charge of the defendant and the plaintiff, having paid the penalty of the bond to certain receivers in bankruptcy who brought suit against it, presented a claim to the State Superintendent of Banks for reimbursement, and, the claim having been rejected, brings this action to enforce its right to reimbursement.

*Held*, that although the plaintiff, if it had paid the creditors of the bankrupt estate in full so that they had no claim against the bankrupt, would have been subrogated to their rights, yet where the creditors are still entitled to dividends upon their entire claim in addition to their rights against the surety, subrogation became impossible, there being nothing to which the surety can be subrogated.

*Held, further*, that though the plaintiff as surety cannot be subrogated to the rights of the bankruptcy creditors, still it has a claim for moneys paid on the surety bond under the indemnity agreement made by the defendant, and became a creditor of the defendant to the extent of the required payment;

That the plaintiff's right to its dividend cannot be impaired by the fact
    that the claim arises upon a payment of a deficiency upon another debt
    of the defendant which has already had its full dividends.
LAUGHLIN and DOWLING, JJ., dissented, with opinion.

APPEAL by the defendant, Carnegie Trust Company, from a
judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York on
the 6th day of November, 1916.

An appeal is also taken from an order entered in said clerk's
office on the 2d day of November, 1916, granting plaintiff's
motion for judgment on the pleadings, pursuant to which the
judgment appealed from was entered.

*Joseph A. Kellogg* [*Wilbert Ward* with him on the brief],
for the appellant.

*William J. McArthur* [*Leonidas Dennis* with him on the
brief], for the respondent.

SMITH, J.:

The facts in this case are so fully and fairly stated in the
opinion of my brother Justice LAUGHLIN, filed herewith, that it
is not necessary to restate them in this opinion. I will proceed
at once, therefore, to an expression of my views upon the ques-
tions presented.

In Remington on Bankruptcy (Vol. 1 [2d ed.], § 757), in dis-
cussing guaranteed allowable claims, it is said: "There should
be no deduction for the amounts paid in on the debt by the
surety. The creditor should prove for the entire debt as if no
part thereof had been paid by the surety; and if the dividend
plus the payments made by the surety exceed the total amount
due, then the creditor holds the excess in trust for the surety."
That rule seems also to be laid down in section 756. The Bank-
ruptcy Act especially provided that where there is a secured
claim the value of the security must be deducted from the
claim before proof. (30 U. S. Stat. at Large, 560, § 57.) But
a secured claim as there mentioned is defined to be a claim
secured by a lien upon the bankrupt's property. (Id. 545, § 1,
subd. 23.) A claim secured by the surety bond or by an

**178**  U. S. Fidelity & Guaranty Co. *v.* Carnegie Trust Co.

First Department, March, 1917.            [Vol. 177.

indorser, for instance, is not a secured claim within the meaning of the Bankruptcy Law, and, therefore, comes within the common-law right authorizing proof of the full amount of the claim, whether or not any part thereof has been paid by the surety.

If this be the rule I am unable to see how it is possible that this surety, upon paying to the bankruptcy creditors $25,000, is entitled to subrogation. If the surety pays the claim in full, then the creditors have no claim against the bankrupt but the surety is subrogated to their rights. When, however, the creditors are entitled to dividends upon their entire claim in addition to their rights against the surety, that makes subrogation impossible. There is nothing to which the surety can be subrogated.

It does not follow, however, because the surety cannot be subrogated to the rights of the bankruptcy creditors that it has no claim for the moneys paid on the surety bond. The Carnegie Trust Company gave its indemnity agreement covenanting to make good to the surety company any moneys which that company should be compelled to pay under its bond. The surety company thus has become the creditor of the Carnegie Company to the extent of the required payment, and its right to its dividend cannot be impaired by the fact that the claim arises upon a payment of a deficiency upon another debt of the Carnegie Company which has already had its full dividends. To hold otherwise would hold nugatory the indemnity agreement. The authorities holding that one debt of a bankrupt cannot create two liabilities against the estate apply only where a creditor is thus seeking an undue proportion of the assets of the bankrupt. No such result can be here reached, and the surety's claim here arises, as any other claim might arise, out of a contract which itself contemplates the possible inability of the debtor to pay a certain debt in full.

It is not necessary to determine whether or not the claim of the plaintiff can be allowed in such a way as to diminish the dividends which would otherwise accrue to the bankruptcy creditors. It is contended that such effect cannot be given, because it would violate the spirit of the guaranty. The Special Term has so held, and has made full provision for the

protection of the bankruptcy creditors in the judgment appealed from, and from this judgment the plaintiff has taken no appeal.

I recommend, therefore, that the judgment be affirmed, with costs.

Clarke, P. J., and Shearn, J., concurred; Laughlin and Dowling, JJ., dissented.

Laughlin, J. (dissenting):

Pursuant to the Bankruptcy Act of 1898 (30 U. S. Stat. at Large, 562, § 61), the United States District Court for the Southern District of New York duly designated the defendant as a depository for the money of bankrupt estates; but security was required by statute and on the 31st day of May, 1907, the plaintiff executed a bond in the penal sum of $25,000, conditioned that the defendant should well and truly account for and pay over, as provided by the statute and the rules, orders and decrees of the court, all moneys so deposited with it.   The defendant evidently made a formal application in writing to the plaintiff to execute the bond, for that is recited in an agreement in writing, of the same date, made by the defendant with the plaintiff, wherein it is also recited that in consideration of the execution of such bond and of one dollar, defendant agreed, among other things, that it would at all times indemnify and save the plaintiff, in effect, harmless; and would reimburse it for all sums of money it might be obliged to pay by reason of the execution of the bond; and would notify the plaintiff of the commencement of any proceeding or action with respect to the fund so deposited.   It was further provided in the agreement that the plaintiff should have the right at any time to call upon the defendant to account and to procure its discharge from liability under the bond, and that plaintiff should have the right " to look to and rely upon the property of the depository," its income and earnings, and to follow and recover out of its property for anything due or to become due to the plaintiff under the agreement; and that the acceptance of the agreement should not abridge or limit the right of the plaintiff to be subrogated to any right or remedy, or limit any right or remedy which it might otherwise have, acquire or

enforce; and that the plaintiff should have every right or remedy which an individual surety, acting without compensation, would have.

On the 7th day of January, 1911, the Superintendent of Banks took charge of the defendant. At that time there had been deposited with the defendant, pursuant to its designation as such depository and remained undrawn, funds to the extent of $180,000. A trustee and a receiver in bankruptcy claimed a preference and brought actions against the defendant to have a preference declared as against the other creditors of the defendant; but it was held by the Court of Appeals, reversing this court (*Henkel* v. *Carnegie Trust Company*, 154 App. Div. 596), that the claim made by the trustee and receiver in bankruptcy was not entitled to preference. (*Henkel* v. *Carnegie Trust Company*, 213 N. Y. 185.) The receiver in bankruptcy thereafter claimed the penalty of the bond from the plaintiff and brought an action against the plaintiff thereon in the Federal court in behalf of all creditors of bankrupts similarly situated, and, pursuant to an order made in that action on the 26th day of May, 1915, the plaintiff paid the penalty of the bond and six per cent interest from the date of the commencement of the action. The plaintiff thereupon presented a claim to the Superintendent of Banks for reimbursement, and on its being rejected brought this action, alleging these facts and that the defendant has funds applicable to the payment of the claim in excess of the amount thereof. The answer alleges, as a separate defense, in effect that the claims of depositors of the bankrupt estate funds were filed with the Superintendent of Banks and allowed as unpreferred claims; that thirty-five per cent dividends, amounting to $67,192.50, have been duly allowed and paid thereon by order of this court, and the same percentage of dividends was likewise allowed and paid on all other unpreferred claims. The judgment demanded by the plaintiff is that its claim be allowed in full and that it be declared that it is entitled to receive from the Superintendent of Banks its distributive share of the assets of the plaintiff. By the judgment it is ordered, adjudged and decreed that the plaintiff has a good and provable claim against the assets of the defendant and that the Superintendent of Banks be directed

to receive and allow the claim as a valid unpreferred claim, and that in making payment thereon of the dividends *which have been declared or may hereafter be declared* the Superintendent of Banks " shall deduct therefrom and pay over, *pro rata*, among the creditors of the Carnegie Trust Company, for whose benefit plaintiff's bond, referred to in the complaint, was given, a sum equal to the amount in which the dividends payable to the said creditors have been reduced by the allowance of the plaintiff's claim."

It is claimed in behalf of the appellant that the effect of the judgment is to duplicate the claims against the defendant to the extent of the plaintiff's claim for reimbursement and to reduce the future dividends to the other creditors proportionately. If that were its effect, manifestly it could not be sustained. It is not entirely clear what is intended by the judgment. It is contended that the plaintiff's claim is prediated on the indemnity agreement and not on subrogation to the rights of the bankruptcy creditors to the extent that their claims were reduced by the payment made by the plaintiff on the bond. If the plaintiff had paid the penalty of the bond before the bankruptcy creditors filed their claims they would have been entitled to prove their claims only in the amount thus reduced, and the plaintiff would have been entitled to file and prove a claim, in their right by subrogation or if it saw fit, under the indemnity agreement, as it claims here. There would then have been no duplication of claims, and while the plaintiff's claim might have been in excess of the amount by which the claims of the bankruptcy creditors were reduced, owing to the costs and expenses of the action to collect plaintiff's liability on the bond, still the bankruptcy creditors would have valid claims for the balance unpaid on the deposit account, after applying the proceeds of the collection on the bond; and the plaintiff likewise would have a valid claim under the indemnity agreement to the extent of the entire amount which it was obliged to pay on the bond. The bankruptcy creditors, however, filed and proved their claims in full, and when they were allowed by the Superintendent of Banks the plaintiff, not having paid its liability on the bond, had no provable claim. It is to be inferred from the answer that this was the situation

when the dividend of thirty-five per cent was declared and paid to the bankruptcy creditors. On subsequently paying the amount for which it was liable on the bond, the plaintiff doubtless could, if it had so elected, have asserted a claim on the theory that it had become subrogated to the rights of the bankruptcy creditors to the extent that their claims had been reduced by the payment made by the plaintiff and have asserted an independent claim under the indemnity agreement for the further amount, if any, of its claim to indemnity; but it saw fit to assert a claim under the indemnity agreement for the full amount which it was obliged to pay. That, I think, it could do as against the *balance of the fund undistributed at the time;* but, of course, it is only entitled to *future* dividends, and in the proportion that its claim bears to the balance unpaid on the claims of other unpreferred creditors. If it were now to be paid a thirty-five per cent dividend on its claim, the same as has been paid to other creditors, it would, in effect, be receiving what has already been paid to the bankruptcy creditors. By failing to discharge its liability on the bond it has permitted the bankruptcy creditors to recover a dividend on the entire amount of their claims undiminished by its liability to them; and it is in a no more favorable position than if it had claimed by subrogation; and manifestly, on the theory of subrogation, it would be limited to sharing in that part of the assets remaining. If, as appears to be assumed in the opinion of Mr. Justice Smith, equitable principles applied in the administration of the Bankruptcy Law are to govern, then I think the plaintiff could not prove an independent claim in its own right, and that its only remedy would lie in proof of the entire claim by the bankruptcy creditors and the recovery of their proportionate share of the bankrupt estate holding any surplus over the balance due them for the surety. (Bankruptcy Act, [30 U. S. Stat. at Large, 560], § 57; Collier Bankruptcy [10th ed.], 724, 736; *Young* v. *Gordon,* 219 Fed. Rep. 168; *Matter of Keep Shirt Co.,* 200 id. 80; *Matter of Heyman,* 95 id. 800.) · The indemnity agreement could not, I think, change the rule, for it merely expresses a liability for reimbursement which would have been implied by law. We are here, however, administering general equity jurisdiction without regard to the Federal

Bankruptcy Law and rules or the decisions thereunder.　The views I have expressed accord to the plaintiff its full rights. The bankruptcy creditors, however, are not before the court and no adjudication should be made herein which, although it could not be *res adjudicata* with respect to their rights, might establish by *stare decisis* the rules of law applicable thereto. After the bankruptcy creditors received dividends aggregating thirty-five per cent of their claims, the plaintiff paid, to apply on the balance of their claims, the amount of its liability on the undertaking, and to that extent the claims of the bankruptcy creditors in their own right have necessarily been reduced.　It is quite clear, I think, that the plaintiff should not be permitted to have the same dividend declared and paid on its claim as has already been paid on the other claims, and that it should be limited to participating in dividends to be declared in the future, and even as to those it is manifest that it should not be permitted to participate if the bankruptcy creditors are at the same time to be permitted to receive dividends on their claims as if they had received nothing from the plaintiff, for that would duplicate the claims and be prejudicial to the rights of other creditors.　It is manifest, therefore, I think, that the plaintiff is not entitled to the judgment it demands, and while ordinarily that would not necessarily deprive the court of granting the judgment to which the moving party appears to be entitled, giving him leave to withdraw the motion on payment of costs, if unwilling to take the judgment to which the court deems him entitled — still in the case at bar, I am of opinion that the plaintiff's claim should not be adjudicated without the presence of the bankruptcy creditors at least, as it is probable that their respective claims will come in conflict.

I am of opinion, therefore, that the judgment should be reversed and motion denied, with costs to appellant to abide the event.

DOWLING, J., concurred.

Judgment affirmed, with costs.