UNITED STATES FIDELITY & GUARAN-
TY CO. v. CENTROPOLIS BANK OF
KANSAS CITY, MO., et al.

(Circuit Court of Appeals, Eighth Circuit.
February 9, 1927.)

No. 7411.

I. Banks and banking ⊂⟩80(9)—Creditor of in-
solvent bank, holding collateral security, is
entitled to claim for total debt against insol-
vent debtor and to dividends thereon until
debt is paid.

Where creditor of insolvent bank holds col-
lateral security for payment of its debt, it is
entitled to allowance of claim for full amount
of debt and to payment of dividends on entire
debt, pro rata with general creditors, until divi-
dends, together with amount realized from se-
curity, equal full amount of debt.

2. Banks and banking ⊂⟩80(9)—County held
entitled to total claim against insolvent de-
pository, and to dividends thereon until such
dividends, with amount paid by surety,
equaled deposit.

Where county had deposit in insolvent bank
partially secured by sureties, it is entitled to al-
lowance of claim for full amount of deposit,
and to receive dividends thereon until divi-
dends, together with amount paid by sureties,
equal full amount of deposit.

3. Principal and surety ⊂⟩175—Bank's con-
tract to indemnify surety guarantying county
deposits held legal and enforceable contract.

Contract of indemnity, entered into by bank
with surety company executing surety bond
guarantying county deposits, not being in con-
travention of any provision of law or public
policy of state, held a legal and enforceable con-
tract.

4. Principal and surety ⊂⟩175—Implied con-
tract that principal will indemnify surety for
payment made to creditor arises when surety-
ship is made.

When a contract of suretyship is made,
there arises, in absence of express agreement,
an implied contract that principal will indem-
nify surety for any payment latter may make
to creditor in compliance with contract of sure-
tyship, and such implied contract, arises when
suretyship is made, and not when payment is
made by surety thereunder.

5. Banks and banking ⊂⟩80(1)—Surety guar-
antying county deposits in insolvent bank held
to have "claim" for payment thereunder by
virtue of contract of indemnity (Rev. St. Mo.
1919, §§ 11700, 11702, 11713, 11715–11724,
Laws Mo. 1921, p. 394).

Surety guarantying county deposits in in-
solvent bank, after paying its obligation under
bond, held to have a "claim" against bank,
within meaning of Rev. St. Mo. 1919, §§ 11702,
11713, 11715–11722, by virtue of its contract of
indemnity, and mere fact that claim accrued
under bond after bank was closed and placed
in process of liquidation, pursuant to Laws
Mo. 1921, p. 394, and Rev. St. Mo. 1919, §§ 11700–
11724, did not prevent allowance of claim.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Claim.]

17 F.(2d)—58

6. Subrogation ⊂⟩28—Surety liable for por-
tion of debt held not entitled to subrogation,
unless he pays whole debt, or it is otherwise
satisfied.

Surety, who is liable only for part of debt,
does not become subrogated to collateral, or to
remedies available to creditor, unless he pays
whole debt, or it is otherwise satisfied.

7. Principal and surety ⊂⟩59—Suretyship con-
tracts should be interpreted according to
terms, given effect in their plain, ordinary,
and popular sense.

Contracts of suretyship should be interpret-
ed like other classes of contracts, according to
sense and meaning of terms which parties have
used, and those terms should be taken, under-
stood, and given effect in their plain, or-
dinary, and popular sense.

8. Banks and banking ⊂⟩80(7)—County's
claim against insolvent bank for deposits held
not entitled to priority over claim of surety
under indemnity contract.

Where surety has discharged its liability
under bond partially guarantying county de-
posits in insolvent bank, claim of county against
bank on its contract of deposit is not entitled
to priority over claim of surety by virtue of
contract of indemnity.

Appeal from the District Court of the
United States for the Western District of
Missouri; Merrill E. Otis, Judge.

Suit by the United States Fidelity &
Guaranty Company against the Centropolis
Bank of Kansas City, Mo., and others. De-
cree for defendants, and complainant ap-
peals. Reversed and remanded, with direc-
tions.

Whitson Rogers and Ellison A. Neel,
both of Kansas City, Mo. (A. L. Cooper, of
Kansas City, Mo., and Joseph A. McCul-
lough and J. M. McFall, both of Baltimore,
Md., on the brief), for appellant.

Leslie J. Lyons and Ilus M. Lee, both of
Kansas City, Mo. (R. R. Brewster and
Henry M. Griffith, both of Kansas City, Mo.,
on the brief), for appellees.

Before BOOTH, Circuit Judge, and
PHILLIPS and JOHN B. SANBORN, Dis-
trict Judges.

PHILLIPS, District Judge. The United
State Fidelity & Guaranty Company (here-
inafter called Surety Company) brought this
suit against the Centropolis Bank of Kan-
sas City, Mo., C. E. French, commissioner
of finance of the state of Missouri, H. F.
Lawrence, deputy commissioner of finance of
the state of Missouri, Jackson county, Mo.,
and E. W. Hayes, Daniel G. Stewart, and
Henry Rummel, judges of the county court
of Jackson county, Mo., to secure a de-
cree, adjudging that the Centropolis Bank,
an insolvent banking corporation, is indebt-

ed to the Surety Company in the sum of $50,000, and that the Surety Company is entitled to share ratably with other general creditors in the distribution of dividends from the assets of the bank, directing Lawrence, as deputy commissioner of finance, and his successors in office, to pay the Surety Company its pro rata share upon its claim of $50,000 of all dividends distributable to general creditors, and enjoining such deputy commissioner and his successors from paying dividends upon such claim of $50,000 to Jackson county.

The material facts are not in dispute and are as follows:

The Centropolis Bank was a banking corporation organized under the laws of Missouri. On May 9, 1923, the county court of Jackson county, Mo., by order duly entered, awarded a contract to the bank for one-tenth of the county deposits for the ensuing two years. On May 18, 1923, the bank made a written application to the Surety Company for a surety bond to secure such deposit with the bank. The application in part read as follows:

"The undersigned agrees as follows:
* * *

"2. To indemnify, and keep indemnified, from and against all losses by reason of said [United States Fidelity & Guaranty] Company having executed said bond. * * * *"

It was duly executed by the bank. Pursuant to such application the Surety Company, as surety, and the bank as principal, executed and delivered to Jackson county a surety bond in the usual form for the penal sum of $50,000. The bond was conditioned as follows:

"The condition of the above obligation is such that whereas, the above bounden Centropolis Bank of Kansas City, was on the 9th day of May, 1923, by the county court of Jackson county, Missouri, in regular session at Independence, Missouri, duly declared and awarded by said county court to be the successful bidder as depository for one-tenth of the funds of said county for a period of two years, beginning the 19th day of May, 1923, and ending on the 15th day of August, 1925, and to pay interest upon such one-tenth of the funds of said county so deposited with said depository computed on the daily balances with said depository, said Centropolis Bank of Kansas City, at the rate of 3.75 per cent. per annum thereof, to the treasurer of said Jackson county monthly.

"Now, therefore, if the said Centropolis Bank of Kansas City shall faithfully perform all of the duties and obligations de-volving by law upon said Centropolis Bank of Kansas City as depository of said one-tenth of said funds of said Jackson county, Mo., as aforesaid, and pay upon presentation of all checks drawn on said depository whenever any funds therefor shall be in said depository when drawn thereon by the proper officers of said county, and that all interest will be promptly paid to the treasurer of said county monthly, and that all of said funds shall be faithfully kept and accounted for according to law, then the above obligation to be void, otherwise to remain in full force and effect."

At about the same time, the bank, as principal, and the Maryland Casualty Company, as surety, executed and delivered to Jackson county a surety bond for the penal sum of $50,000, conditioned the same as the bond of the Surety Company.

On November 14, 1924, the bank, having become insolvent, closed its doors. Whereupon the commissioner of finance of the state of Missouri took charge of the bank and its assets, and since said date has been and now is engaged in liquidating such bank pursuant to the provisions of the laws of Missouri. Sections 1 and 4 of the Act of March 24, 1921, Laws of Missouri 1921, p. 394, and sections 11700 to 11724, inclusive, Revised Statutes of Missouri 1919. On the day the bank closed, Jackson county had on deposit therein, pursuant to such order of the county court, the sum of $122,324.59. It presented checks for the amount thereof to the bank, payment was refused, and it made due demand upon the Surety Company to perform the obligations of its bond. On May 7, 1925, the Surety Company paid to Jackson county $51,441.65, the amount of the penal sum of the bond, together with interest from November 14, 1924, to May 7, 1925, and received from the county a receipt in full for such amount. The Maryland Casualty Company also paid Jackson county the sum of $50,000, with interest from November 14, 1924, to date of payment.

Jackson county filed with the deputy commissioner of finance, in charge of the liquidation of the bank, its claim for $122,-324.59, the full amount of its deposit. On May 7, 1925, after its payment to Jackson county, the Surety Company filed with the deputy commissioner of finance, its claim for $50,000. The commissioner of finance approved and allowed the claim of Jackson county, and disapproved and rejected the claim of the Surety Company.

The assets of the bank are insufficient to pay its creditors in full.

After the rejection of its claim, the Surety Company brought this suit. It set up the above facts, and, basing its claim both on the right of subrogation and on its contract of indemnity, sought the relief above stated.

Jackson county filed an answer and cross-bill. By its cross-bill it sought a decree directing the deputy commissioner of finance to set aside and pay dividends on its entire claim of $122,324.59 until the amount of such dividends should equal the sum of $22,324.59, the balance remaining after deducting the payments made by the two surety companies.

The trial court held that the Surety Company was not entitled to be subrogated to the claim of Jackson county to the extent of $50,000; that it was not entitled to dividends on its claim for $50,000 pro rata with the general creditors; that it had a claim against the bank, but that it was not entitled to receive dividends on such claim until Jackson county had been paid in full; that the deputy commissioner of finance should pay dividends to Jackson county upon its claim of $122,324.59, until such dividends should equal the sum of $22,324.59, and that he should then pay the remaining dividends, one half to the Surety Company, and the other half to the Maryland Casualty Company. It entered its decree accordingly, and the Surety Company has appealed from such decree.

Counsel for the Surety Company now abandon any claim under the right of subrogation and predicate their case squarely upon the contract of indemnity.

The first contention urged by counsel for the Surety Company is that the county was only entitled to receive dividends on the sum of $22,324.59, the balance remaining due on the deposit after the application of the payments made to it by the two surety companies.

[1] Where the creditor of an insolvent bank holds collateral security for the payment of its debt, it is entitled to the allowance of a claim for the full amount of its debt, and to the payment of dividends on the entire debt, pro rata with general creditors, until the dividends, plus the amount realized from the security, equals the full amount of the debt. Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640; Chemical National Bank v. Armstrong (C. C. A. 6) 59 F. 372, 28 L. R. A. 231; Commercial & Savings Bank v. Jenks Lbr. Co. (C. C.) 194 F. 732; Washington-Alaska Bank v. Dexter Horton National Bank of Seattle, Washington (C. C. A. 9) 263 F. 304;

Goodman Mfg. Co. v. Pittsburgh-Buffalo Co. (C. C. A. 3) 265 F. 561; Pintsch Compressing Co. v. Buffalo Gas Co. (C. C. A. 2) 280 F. 830, 844, 845; 32 C. J. p. 882, sec. 176.

Counsel for the Surety Company undertake to distinguish the instant case from the cases above cited. They say that in those cases the debts were either secured by a pledge of collateral or by a mortgage of property, and that here the debt was secured by a contract of suretyship. We are unable to see any reason why the character of the security held by the debtor should change the rule. We have found only one case on the question where the debt was secured by a contract of suretyship—Citizens' National Bank v. Minge, 49 Minn. 454, 52 N. W. 44. In that case, the court said:

"2. Under the late federal bankrupt act, it was provided that, where a debt was secured on the property of the bankrupt, it could only be proved for the balance over and above the value of the security, unless the creditor filed a release of his security. Our insolvent law contains no express provision of this kind, and whether any such is implied is a question not now before us. But, under all bankrupt laws of which we have any knowledge, it has been uniformly held that, where the debt is secured by the property or personal obligation of a third person, who stands in the relation of surety, it is provable for its full amount against the estate of the bankrupt principal debtor, and that, too, without the creditor being required to release his security. Any other rule would, for manifest reasons, be unjust alike to the creditor and to the surety."

[2] We therefore conclude that Jackson county is entitled to the allowance of its claim for the full amount of the deposit, to wit, $122,324.59, and to receive dividends thereon until such dividends shall equal the sum of $22,324.59.

[3] The second contention urged by counsel for the Surety Company is that it is a general creditor of the bank on its contract of indemnity, and is entitled to the allowance of a claim in the sum of $50,000 and to share in dividends thereon pro rata with other general creditors.

The contract of indemnity which the bank entered into with the Surety Company was not in contravention of any provision of law or of the public policy of the state of Missouri. It was therefore a legal and enforceable contract. National Surety Co. v. Blumauer (C. C. A. 9) 247 F. 937; Western

Surety Co. v. Kelley, 27 S. D. 465, 131 N. W. 808; 31 C. J. 424, sec. 16.

[4] It is well settled that, when a contract of suretyship is made there arises, in the absence of an express agreement, an implied contract that the principal will indemnify the surety for any payment the latter may make to the creditor in compliance with the contract of suretyship. This implied contract arises when the suretyship is made, and not when the payment is made by the surety thereunder. The relation of debtor and creditor exists between the principal and surety from the time the contract of suretyship is made. The payment relates back to the time when the contract was entered into by which the liability to pay was incurred, fixes the amount of damages for which the principal is liable to the surety and matures the cause of action therefor. Rice v. Southgate, 16 Gray (82 Mass.) 142; Griffin v. Long, 96 Ark. 268, 131 S. W. 672, 35 L. R. A. (N. S.) 855, Ann. Cas. 1912B, 622; In re Stout (D. C.) 109 F. 794; Smith v. Young, 173 Ala. 190, 55 So. 425; Hatfield v. Merod, 82 Ill. 113; Berry v. Ewing, 91 Mo. 395, 3 S. W. 877; Martin v. Ellerbe's Adm'r, 70 Ala. 326, 335; Poe v. Dixon, 60 Ohio St. 124, 54 N. E. 86, 88, 71 Am. St. Rep. 713; Loughridge v. Bowland, 52 Miss. 546; Bragg v. Patterson, 85 Ala. 233, 4 So. 716, 717; Barth v. Graf, 101 Wis. 27, 76 N. W. 1100, 1103; Nally v. Long, 56 Md. 567; M. Kahn & Bros. v. Bledsoe, 22 Okl. 666, 98 P. 921, 132 Am. St. Rep. 665.

In Rice v. Southgate, supra, the court said:

"Upon well-settled principles, it is clear that the contract of a principal with his surety to indemnify him for any payment which the latter may make to the creditor in consequence of the liability assumed takes effect from the time when the surety becomes responsible for the debt of the principal. It is then that the law raises the implied contract or promise of indemnity. No new contract is made when the money is paid by the surety, but the payment relates back to the time when the contract was entered into by which the liability to pay was incurred. The payment only fixes the amount of damages for which the principal is liable under his original agreement to indemnify the surety. Gibbs v. Bryant, 1 Pick. [Mass.] 121. Appelton v. Bascom, 3 Met. [Mass.] 169."

In Griffin v. Long, supra, the court said: "The true rule seems to be that the surety becomes a creditor of the principal at the time he signs the note as surety, and not at the time he pays the same."

In Smith v. Young, supra, the court said:

"Although a surety cannot maintain an action against his principal on the liability created by the suretyship, until such surety has paid the debt or a part thereof, it is because the right of action does not come into existence until such payment, and not because the relation of debtor and creditor did not theretofore exist. The same thing is true as to the creditor or payee of a note signed by the principal and surety. The payee cannot sue the principal or the surety until the note is due, yet the relation of debtor and creditor certainly exists from the making of the note."

In M. Kahn & Bros. v. Bledsoe, supra, the court said:

"It has been repeatedly held by the courts that a surety is a creditor of his bankrupt principal, and that he is such creditor before default and from the date of signing the note."

A fortiori such results must follow where an express contract of indemnity is made.

The contract of indemnity created the relation of debtor and creditor between the bank and the Surety Company from the date the contract of suretyship was executed and delivered to Jackson county. The payment made by the Surety Company related back to the date of the contract of indemnity, fixed the amount of damages for which the bank was liable to the Surety Company and matured, the latter's cause of action on the contract of indemnity.

It follows that the Surety Company became a creditor of the bank on May 19, 1923, when the county depository bond was executed and delivered; that the Surety Company was a creditor of the bank when the bank became insolvent, closed its doors and went into the hands of the deputy commissioner of finance for the the purposes of liquidation on November 14, 1924; that upon the payment by the Surety Company of the penalty of the bond on May 7, 1925, a cause of action accrued in its favor against the bank, which had its inception in the contract of indemnity, and which related back to the date of the contract of suretyship made May 19, 1923.

[5] What remedy has the Surety Company on this cause of action? The act under which the assets of the bank are being collected, distributed and paid out to creditors contemplates that all of the bank's assets shall be collected, converted into money and distributed to the creditors, and that the banking corporation shall be dissolved, unless the creditors

are paid in full. Sections 11713, 11715, 11716, 11717, 11718, 11719, 11720, 11721, 11722, and 11702, Rev. St. Mo. 1919. The mere fact that the claim accrued after the bank was closed and placed in the process of liquidation should not prevent, under such circumstances, the Surety Company from having its claim allowed.

In the case of Spader v. Mural Decoration Mfg. Co., 47 N. J. Eq. 18, 20 A. 378, certain persons had entered into contracts with the corporation for personal services for a term of years. Before these contracts expired, and while they were in full force and effect, the corporation became insolvent and was placed in the hands of a receiver. Thereafter the contracts were breached, and the persons employed by the corporation under such contracts filed their claims with the receiver. In passing on these claims, the court said:

"The general scheme of the act contemplates the ascertainment and payment of all just liabilities. The terms 'creditor' and 'debt' are not used in a narrow, restrictive, or technical sense. It could hardly have been the intention of the lawmakers to distribute the surplus of assets, or, in other words, return capital, to the stockholders of the company (that is, to those who deliberately ventured for gain, and pledged their capital for the security of those who were induced to deal with them), and at the same time disregard those who, dealing with those stockholders upon the faith of that security, became justly entitled to damages for breaches of contracts occasioned by an insolvency and suspension that the very capital relied upon was intended to ward off. Such distribution would be the protection of capital against its just liability. The receiver is bound in duty, and clothed with power, to reach out and take in every conceivable asset due or thereafter to accrue, to the corporation. A complete collection of assets is contemplated, and a full and final distribution of them is made possible. Such being the situation, natural justice demands that those who suffer from breaches of contract should be included in the distribution, even though the breaches and consequent damages follow the insolvency, and I think that it is in consonance with the scope and design of the legislation considered to give to the statute a broad and liberal interpretation which will admit of that justice being done. * * * I can see no reason, under this law, for distinguishing between cases where the breach of contract precedes the adjudication of insolvency and cases where the breach follows in consequence of that adjudication."

See, also, Minneapolis Baseball Co. v. City Bank, 74 Minn. 98, 76 N. W. 1024; McGraw v. Union Trust Co., 135 Mich. 609, 98 N. W. 390.

We think the Surety Company is a creditor, and that it has a claim within the meaning of the statutes of Missouri referred to above.

We therefore conclude that the Surety Company is entitled to have its claim allowed for the sum of $50,000 and to share in the distribution of the assets of the bank.

There is nothing in the act which creates any priority as between the claims of general creditors. Jackson county, the other depositors of the bank, and the Surety Company are general creditors. They are entitled to share ratably unless there is something in the contract of suretyship which gives Jackson county a priority over the Surety Company.

Counsel for the county and for the deputy commissioner of finance seek to find this right of priority in the provisions of the condition of the bond. They say the condition was that the bank should faithfully perform all of the duties and obligations devolving upon it as a depository of the funds of Jackson county, and should pay upon presentation all checks drawn on such depository, and that all funds of the county deposited with the bank should be faithfully kept and accounted for according to law. They contend that by these provisions of the bond, the bank, as principal, and the Surety Company as surety, guaranteed the payment of the full deposit, and that to permit the Surety Company to share pro rata with the general creditors in the payment of dividends will lessen the amount of dividends payable to the county, and thereby violate the spirit of the guaranty. They cite in support of their position Maryland Casualty Co. v. Fouts (C. C. A. 4) 11 F.(2d) 71, and Zimmerman v. Chelsea Savings Bank, 161 Mich. 691, 125 N. W. 424, 127 N. W. 351. In support of their contentions, counsel for the Surety Company cite United States F. & G. Co. v. Carnegie Trust Co., 177 App. Div. 176, 164 N. Y. S. 92; Id., 221 N. Y. 646, 117 N. E. 1086; American Surety Co. of New York v. National Bank of Barnesville (D. C. Southern District of Ohio), 17 F.(2d) 942; In the Matter of Dailey and Ivins, Bankrupts (D. C. New Jersey) 18 F.(2d) ——.

[6] If the question here were one of subrogation, we could readily agree with the contentions of counsel for the commissioner of finance and the county. It is a familiar principle of the law of subrogation that a surety liable only for part of the debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied. Unit-

ed States v. National Surety Co., 254 U. S. 73, 41 S. Ct. 29, 65 L. Ed. 143; United States F. & G. Co. v. Union Bank & Trust Co. (C. C. A. 6) 228 F. 448, 455; National Surety Co. v. Salt Lake County (C. C. A. 8) 5 F. (2d) 34, 36. The reasons for the rule are well stated in Guaranty Co. v. Trust Co., supra, where the court said:

"The right of a surety on a bond to be subrogated for the obligee in a right of action against one wrongfully causing the liability is founded on payment by the surety to the obligee, and it does not come into existence except upon full payment of the loss indemnified against. This is because subrogation is of an equitable character, and the surety cannot be permitted to take away from the obligee, to the latter's prejudice, securities or rights in which he is still beneficially interested."

But here, the Surety Company does not claim through subrogation, any right of Jackson county, but asserts an independent claim in its own right upon a contract which it entered into with the bank.

[7] Contracts of suretyship should be interpreted like other classes of contracts, according to the sense and meaning of the terms which the parties have used, and those terms should be taken, understood and given effect in their plain, ordinary and popular sense, fairly and justly to all the parties to the contracts. New Amsterdam Casualty Co. v. Central Nat. Fire Ins. Co. (C. C. A.) 4 F. (2d) 203, 208; Atlas Reduction Co. v. New England Ins. Co. of New Zealand (C. C. A. 8) 138 F. 497, 9 L. R. A. (N. S.) 433; Hawkeye Commercial Men's Ass'n v. Christy (C. C. A.) 294 F. 208, 40 A. L. R. 46; Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 462, 463, 14 S. Ct. 379, 38 L. Ed. 231.

We think that a construction of the bond in the instant case in accordance with the above rule compels the conclusion that it was the intention of all of the parties to the contract that the Surety Company should be liable to the county for all of the principal of the county's deposit, together with interest thereon, up to and including, but not exceeding, the sum of $50,000, and that the recital in the bond that the penal sum thereof is $50,000, just as effectually limits the language of the condition as if there had been written into the language of the condition itself the words "up to and including, but not exceeding, $50,000." It is true that the liability under the bond was not limited to any particular portion of the whole deposit. In that sense, the bond was security for the whole deposit, and for that reason the right

of subrogation does not exist, but the maximum amount for which the Surety Company could be held liable thereunder was expressly fixed at $50,000.

[8] The Surety Company has discharged that liability by payment in full. The county has received all that it contracted for from the Surety Company. How then can the county say that the spirit of the guaranty will be violated? We find nothing in the language of the bond which justifies the contention that the claim of the county upon its contract of deposit should be given any priority over the claim of the Surety Company upon its contract. This conclusion has not been reached without a careful consideration of the opinion of the Fourth Circuit in Casualty Co. v. Fouts, supra, and of the Supreme Court of Michigan in Zimmerman v. Bank, supra.

The Surety Company contracted to reimburse the county for the defaults of the bank up to and including the penal sum of $50,000. It has fully performed that contract. It in turn took a contract from the bank to indemnify it for such a loss on its part under the bond. Such contract of indemnity was valid. It created the relation of debtor and creditor when the bond was executed and delivered. It has been breached. The Surety Company asserts a claim for damages on account of such breach as a general creditor of the bank. Such being the facts and the relation of the parties, we can see no logical answer to the contention that the Surety Company is entitled to the allowance of its claim as a general creditor on its contract of indemnity and to share in dividends thereon pro rata with other general creditors.

The decree of the court below is therefore reversed, and the cause is remanded, with instructions to modify the decree in accordance with this opinion. The costs of the appeal will be assessed equally against Jackson county and the commissioner of finance as liquidating officer of the bank. It is so ordered.