UNITED STATES FIDELITY & GUARANTY CO. v. McCLINTOCK et al.

District Court, D. Wyoming. September 2, 1927.

No. 1684.

1. Banks and banking ⬉80(1)—Surety discharging liability on bond securing county deposits held entitled to participate with general creditors in future dividends to full amount of payment.

Where surety discharged its liability under bond securing county deposits in insolvent bank, it was entitled to have its claim allowed by bank's receiver for full amount of its payment on bond and to participate with general creditors in all unpaid and future dividends.

2. Subrogation ⬉26—As respects subrogation, sureties on county treasurer's bond held not "volunteers" in paying deficiency on insolvency of depositary on commissioner's representations that treasurer violated duties (Comp. St. Wyo. 1920, § 2968).

Where sureties on county treasurer's official bond paid deficiency due to county on insolvency

of bank in which county funds were deposited on county commissioner's demand therefor and representations that treasurer violated his duties in failing to have collateral put up by bank in lieu of depositary bonds approved by county commissioners as required by Comp. St. Wyo. 1920, § 2968, sureties were not "volunteers" as respects their right to subrogation to rights of county.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Volunteer.]

3. Subrogation ⬉28—Debt must be fully paid before right of subrogation exists.

A debt must be fully paid before the right of subrogation exists.

4. Subrogation ⬉28—Sureties on bond of insolvent county depositary held entitled to subrogation to county's rights, where sureties' payments plus bank's dividend paid county's claim in full.

Under law of Wyoming making county treasurer, in depositing county funds in designated depositaries approved by governing board, mere agent of county which is creditor of the depositary, held that on insolvency of depositary bank its sureties making payment to county were entitled to subrogation to rights of county to future dividends on county's claim and to collateral security in proportion as their payments went to discharge bank's debt to county, where their payments on bonds plus dividend paid by bank made county whole.

5. Banks and banking ⬉80(1)—Subrogation ⬉7(1)—Surety on bond securing county deposit held entitled to allowance of claim on indemnity agreement and to subrogation to county's rights against insolvent bank.

Surety on bond securing county deposit in insolvent bank was entitled to allowance of its claim on bank's agreement to indemnify it and participate in dividends as general creditor and also to right of subrogation to county's claim against bank for amount paid on bond.

In Equity. Suit by the United States Fidelity & Guaranty Company against T. E. McClintock, as receiver of the First National Bank of Cheyenne, Wyo., and others. Decree in accordance with opinion.

Gillette & Clark, of Denver, Colo., and W. E. Mullen, of Cheyenne, Wyo., for plaintiff.

L. Ward Bannister and Samuel M. January, both of Denver, Colo., and Dillon, Ellery & Spencer, of Cheyenne, Wyo., for defendants Surety Companies.

Thomas Hunter, of Cheyenne, Wyo., for defendant receiver.

KENNEDY, District Judge. This is a suit in equity brought for the purpose of determining the relative rights of the receiver of the insolvent First National Bank of Cheyenne and three surety companies, growing out of a deposit by the county of Lara-

mie, Wyo., in that bank at the time the bank was closed; one of the surety companies being an indemnitor of the county upon such deposit, and the other two being the official sureties of the county treasurer in guaranteeing the faithful performance of his official duties as such.

The case is submitted upon an agreed statement of facts, which appears in the record as follows:

"(1) That the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000; that this is a suit in equity, arising under the laws of the United States, and is a case for winding up the affairs of a national banking association.

"(2) That the plaintiff and defendant Fidelity & Deposit Company of Maryland are, and at all times mentioned in the complaint were, corporations of the state of Maryland; that defendant National Surety Company is, and at all said times was, a corporation of the state of New York; and that at all said times said three corporations were doing business in the state of Wyoming as surety insurance companies; that defendant the First National Bank of Cheyenne, Wyo., is a national banking association, and at all said times, and until the 9th day of July, 1924, was engaged in the active conduct of the banking business in Cheyenne, Wyo.

"(3) That Ira L. Hanna is the duly elected, qualified, and acting county treasurer of the county of Laramie, Wyo.; that his immediate predecessor in said office was one John Schuneman, whose term of office expired on or about January 1, 1925; that defendants Fidelity & Deposit Company of Maryland and National Surety Company were and are, respectively, sureties upon two certain official bonds of said John Schuneman as such county treasurer, in the penalty of $25,000 each, which said bonds were conditioned as required by law, true copies of which said bonds are attached as Exhibits A and B, respectively, to the answer of the defendants Fidelity & Deposit Company of Maryland and National Surety Company herein, which said copies are made a part hereof.

"(4) That at all times in the complaint mentioned, defendant the First National Bank of Cheyenne, Wyo., was a duly designated depository of the public moneys of the county of Laramie in the possession of the county treasurer of said county; that, upon the application of defendant the First National Bank of Cheyenne, Wyo., therefor, the plaintiff on July 13, 1917, as surety for said bank, to secure the payment by said bank of the moneys of said Laramie county deposited therein, made, executed, and delivered to said county a certain depository bond, in the penalty of $25,000, a true copy of which is attached to the answer of defendants Fidelity & Deposit Company of Maryland and National Surety Company as exhibit C, which said copy is made a part hereof.

"(5) That on the 9th day of July, 1924, defendant the First National Bank of Cheyenne, Wyo., was insolvent and closed its doors and ceased to do business; that thereupon the Comptroller of the Currency of the United States took possession thereof, under the provisions of the National Banking Act, and appointed defendant T. E. McClintock receiver thereof; that defendant McClintock duly qualified as such receiver, took possession of said bank and of its books, records, and assets, and ever since has been, and now is, engaged in the liquidation of its affairs.

"(6) That at the time of the closing of said bank there was on deposit therein of the moneys of said county of Laramie to the credit of 'John Schuneman, County Treasurer,' the sum of $78,929.73, payment of which was secured by said depository bond of plaintiff, and by $110,000 par value of the bonds of the Kimball County Securities Company, which said bonds were pledged and delivered to said Schuneman, county treasurer of Laramie county, by said bank, for the purpose of securing the deposits of said county in said bank under a certain pledge agreement, a true copy of which, marked 'Exhibit D,' is attached to, and made a part of, the answer of defendants Fidelity & Deposit Company of Maryland and National Surety Company, which said copy is made a part hereof.

"(7) That, after the closing of said bank, said Schuneman, as county treasurer, made written demand upon plaintiff for the payment of $25,000 on account of said deposit, because of its obligation so to do under its said depository bond, and that on May 20, 1925, in pursuance of said demand, plaintiff paid to said Schuneman, as such county treasurer, the sum of $25,000 in full satisfaction of its liability under its said depository bond.

"(8) That on the 21st day of May, 1925, said Schuneman, as retiring treasurer of said county, filed with the defendant receiver a proof of claim of said county for the amount of $79,105.24 of the moneys of said county, and that said claim was allowed by said receiver as a general claim in the sum of $53,929.73, but the receiver stands ready to pay dividends on said entire claim in the sum of

$78,929.73, less the 25 per cent. dividend already paid on $53,929.73 thereof, on account of the deposit of Laramie county to whomever shall be found to be entitled thereto.

"(9) That on the 3d day of July, 1925, plaintiff filed with defendant McClintock, as receiver of said bank, its verified proof of claim, in the amount of $25,000, a true copy of which, marked 'Exhibit A,' is attached to, and made a part of, the complaint; that the defendant receiver refused to allow said claim, or any part thereof, and that no part thereof has been allowed or paid by said bank, by the defendant receiver, or by any other person, or at all.

"(10) That on the 2d day of October, 1925, the defendant receiver, in pursuance of an agreement in writing between plaintiff and said Schuneman, a true copy of which, marked 'Exhibit E,' is attached to, and made a part of, the answer of defendants Fidelity & Deposit Company and National Surety Company, paid to said county of Laramie a dividend of 25 per cent. upon $53,929.73, then remaining unpaid, to wit, the sum of $13,482.43, leaving unpaid the sum of $40,447.30.

"(11) That, after the receipt by said county of said dividend, demand was made by the board of county commissioners of said county upon defendants Fidelity & Deposit Company of Maryland and National Surety Company for the payment of said sum of $40,447.30, said commissioners claiming that, in depositing the moneys of said county in said bank in excess of the amount of $25,000, said Schuneman, as county treasurer, had acted in violation of the law, and in breach of the condition of his said two official bonds, upon the ground that said Schuneman failed to have said bonds of the Kimball County Securities Company approved by the board of county commissioners, by reason of which both he and his sureties, defendants Fidelity & Deposit Company and National Surety Company, became indebted to said county of Laramie, in the amount of such excess deposit, to wit, in the sum of $53,929.73, and that said sureties remained so liable for the unpaid balance thereof, to wit, the sum of $40,447.30.

"(12) That on February 3, 1926, defendants Fidelity & Deposit Company of Maryland and National Surety Company paid to said county of Laramie said sum of $40,447.30, together with the additional sum of $1,601.08, as interest thereon, making a total payment of $42,048.38, whereupon, said board of county commissioners and said Ira L. Hanna, as treasurer of said county, in

writing released and discharged said defendant companies, their successors and assigns, of and from all claims and demands of said county of Laramie, by virtue of the execution and delivery by said defendant companies of said two official bonds of John Schuneman, as county treasurer of said county, and purported to sell, assign, convey, and quitclaim to said defendants Fidelity & Deposit Company of Maryland and National Surety Company, all the right, title, and interest, if any they had, in and to said claim of $78,929.73 of said county against said bank and said receiver, a true copy of which instrument of release and assignment is attached as Exhibit F to, and made a part of, the answer of defendants Fidelity & Deposit Company of Maryland and National Surety Company, which said copy is made a part hereof, and said John Schuneman, individually and as former treasurer of the county of Laramie, in the state of Wyoming, in writing also purported to sell, assign, transfer, and set over to said defendant surety companies, their successors and assigns, said claim by him filed as such county treasurer with the receiver of said bank, in said sum of $78,929.73, and all his right, title, and interest in and to said bonds of the Kimball County Securities Company, a true copy of which said instrument of assignment is attached as Exhibit G to, and made a part of, the answer of said defendant surety companies, which said copy is made a part hereof.

"(13) That dividends aggregating 45 per cent. have been declared and paid by the defendant receiver to the general creditors of said bank, but that said receiver has refused to pay, and has not paid, dividends on said claim of $78,929.73, so filed and allowed, either to plaintiff or to the defendant surety companies, and has paid no dividends thereon other than said dividend of 25 per cent. upon $53,929.73 thereof, amounting to $13,482.43; that the defendant receiver is in position, and able to pay said first dividend of 25 per cent. upon the remaining $25,000 of said allowed claim of said county of Laramie."

For the purposes of the discussion of the points involved, the plaintiff, United States Fidelity & Guaranty Company, being the indemnitor of the county funds in the bank, will be spoken of as the depositary surety, the defendant McClintock, receiver of the First National Bank, as the receiver, and the defendants Fidelity & Deposit Company of Maryland and National Surety Company, official bondsmen of the county treasurer, as the official sureties.

The legal points involved being complicated, some of them at least unsettled by prior judicial determination, and the amount involved substantial, it would seem that a review of the decision of this court, whatever it may be, is not only imminent but desirable.

The first point is whether or not the receiver should be required to pay dividends upon the full amount of the county's deposit in the bank at the time it closed; the claim being originally allowed for the face of that deposit, less the amount paid by the depositary surety representing its full obligation upon its indemnifying bond and the first dividend computed and paid upon such balance. Upon this proposition, however, the parties interested have agreed that the claim should be allowed by the receiver for the full amount of the deposit and dividends paid thereon to whomsoever the court shall determine may be entitled to recover the same. It is well that counsel have come to their unanimous conclusion upon this point, in the light of the recent decision from the Eighth Circuit in the case of United States Fidelity & Guaranty Co. v. Centropolis Bank (C. C. A.) 17 F.(2d) 913, where, at page 915, 53 A. L. R. 295, the court says:

"Where the creditor of an insolvent bank holds collateral security for the payment of its debt, it is entitled to the allowance of a claim for the full amount of its debt, and to the payment of dividends on the entire debt, pro rata with general creditors, until the dividends, plus the amount realized from the security, equals the full amount of the debt."
[1] Again, the depositary surety maintains that it is entitled to be allowed by the receiver its claim upon its indemnity agreement in the amount of $25,000, paid by it to the county, and to receive dividends upon such claim along with the general creditors. This the official sureties admit and consent to, but the receiver objects, contending that the allowance of the claim of the county for the full amount of the deposit and the allowance of the claim of the depositary surety will represent the payment of double dividends from the assets of the bank in derogation of the rights of the other depositors, because of the fact that the only deposit in the bank on a par with other depositors was that of the county, and that the depositary surety did not become a creditor until after the bank had closed and had made its payment on its bond. Whatever personal views this court might have can scarcely be considered as material, in the light of recent decisions of our own Circuit Court of Appeals where it has twice

been held that the surety in the situation as is the depositary surety here is entitled to have its claim allowed for the amount which it paid upon the bond and to participate in dividends with the general creditors of the bank. In United States Fidelity & Guaranty Co. v. Centropolis Bank, supra, on page 916, it is said:

"It is well settled that, when a contract of suretyship is made there arises, in the absence of an express agreement, an implied contract that the principal will indemnify the surety for any payment the latter may make to the creditor in compliance with the contract of suretyship. This implied contract arises when the suretyship is made, and not when the payment is made by the surety thereunder. The relation of debtor and creditor exists between the principal and surety from the time the contract of suretyship is made. The payment relates back to the time when the contract was entered into by which the liability to pay was incurred, fixes the amount of damages for which the principal is liable to the surety and matures the cause of action therefor."

In the more recent case of National Surety Co. v. Jenkins (C. C. A.) 18 F.(2d) 707, the same court at page 710, said:

"Is the National Company entitled to the allowance of its claim upon the contract of indemnity and to the payment of dividends thereon pro rata with general creditors? This precise question came before this court recently in the case of United States F. & G. Co. v. Centropolis Bank of Kansas City, Mo., et al. (C. C. A. 8) 17 F.(2d) 913 [53 A. L. R. 295], opinion filed February 9, 1927. We there held that the surety company was entitled to the allowance of its claim and to payment of dividends. thereon pro rata with other general creditors. We adhere to our former decision."

In the absence of any discoverable distinguishing features between those cases and the case at bar, the holding of this court must be that the depositary surety is entitled to have its claim allowed by the receiver for the full amount of its payment upon its indemnifying bond and to participate with the general creditors in all unpaid and future dividends.
[2] By far the more difficult problem is the divergent contentions between the depositary surety and the official sureties as to their respective rights of subrogation to those of the county. As there appears to be no dispute that there is a right of subrogation underlying the situation, it would seem to serve no useful purpose here to discuss the general

right of subrogation, but to refer only to the relative rights as between the sureties.

The depositary surety contends that it should be first subrogated to the rights of the county until its claim is paid in full, while the official sureties contend that they should be first subrogated. In the consideration of this phase of the controversy, a collateral point is raised which would defeat the official sureties in their claim to subrogation. The depositary surety maintains that the official sureties were mere volunteers in the matter of their payments in making up the deficiency due the county after the depositary surety had paid its $25,000 and the first dividend from the bank had been received by the county. Under the agreed statement of facts it appears that the county treasurer accepted collateral security from the bank indemnifying the deposit of the county in the nature of Kimball County Securities Company bonds of the par value of $110,000. It is provided by the Wyoming law, under section 2968 of the Wyoming Compiled Statutes 1920, that, in lieu of depositary bonds securing a deposit of county funds, the treasurer of the county may accept bonds of a certain class to be approved by the proper governing board, which in this instance was the board of county commissioners of Laramie county. After the bank was closed and the county had received the money paid by the depositary surety and the first dividend paid by the receiver, the commissioners made demand upon the official sureties of the treasurer for the deficiency equaling the balance of the county's deposit in the bank. From the agreed statement of facts it appears that the commissioners then claimed to the official sureties that the county treasurer had acted in violation of law, in that he had failed to have the Kimball county bonds approved by the governing board and had thereby breached his official bonds in failing to faithfully discharge the duties of his official position. Without litigating the proposition and in response to the demand of the board of county commissioners, the official sureties paid over such balance in the sum of $40,-000 plus. In this respect I am not prepared to say that the official sureties were volunteers. The statute clearly provides that such collateral securities shall be approved by the governing board. Under these circumstances it should be the duty of the county treasurer to secure the approval of such collateral, because the county treasurer representing the county would in the nature of things be the proper and logical party to present them to the proper governing board for approval.

In no sense could it be considered the duty of the bank to secure the approval of such collateral securities because the bank did not represent the county, nor would it be particularly concerned in the matter of indemnifying the county. Its interest would be in getting the deposit. To my view, in the face of the demand of the county commissioners and the reasons for the demand, the official sureties, probably after investigation, had the right to assume that the trust of the county treasurer to his county had been violated, and that, instead of litigating the controversy, they paid the amount of the claim, for which they should be commended, instead of being penalized. The language of Brandt on Suretyship (3d Ed.) vol. 1, pp. 619, 620, cited by counsel for the official sureties, in defining a volunteer, would seem to clearly exclude the official sureties here from such class. The language is as follows:

"The volunteer is the man who, without any real or supposed interest of his own to protect, without the debtor's request, without any agreement with either debtor or creditor that he shall be put in possession of the creditor's rights, and without any equity in his own favor, intermeddles and pays the debt. The courts have no time for him. The term 'volunteer' is a very unfortunate one. Confusing its meaning in common language with its technical meaning, courts have often denied subrogation where the unfortunate applicant, as a matter of justice and right, was clearly entitled to it."

[3, 4] The official sureties again maintain that the depositary surety is not entitled to a subrogation because it has not brought itself within the rule, which requires that the party entitled to subrogation shall first pay the debt in full, and that, while its obligation was such under its bond to make itself responsible for the entire deposit of the county, and every part of it, although it was limited to the penal sum of the bond, $25,-000, it nevertheless cannot insist upon the right of subrogation until it has paid the entire debt. On the other hand, the depositary surety contends that, by its payment of $25,-000, the dividend from the receiver and the balance from the official sureties of the treasurer, the debt was fully paid, and it is first entitled to subrogation. The law undoubtedly is that the debt must be fully paid before the right of subrogation exists. In speaking of the rule, Mr. Justice Brandeis, in the case of United States v. National Surety Co., 254 U. S. 73, at page 76, 41 S. Ct. 29, 30 (65 L. Ed. 143), says:

"This result is in harmony with a familiar

rule of the law of subrogation under which a surety liable only for part of the debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied."

The difficulty arises out of the words found in the above quotation, "otherwise satisfied." In this respect the depositary surety contends that it comes within the rule because the balance of the debt was "otherwise satisfied" by the official sureties. I am of the opinion that the debt was paid in this case, and from three separate and distinct sources, to wit, $25,000 from the depositary surety, $13,000 plus from the dividend, and $40,000 plus from the official sureties, because by that method the county was made whole. The position of the depositary surety, in contending in one breath that the official sureties by their payment of the deficiency are mere volunteers and in the next breath claiming that by that payment the debt became satisfied and it is therefore entitled to subrogation to the exclusion of the official sureties, does not ring true in equity. The right of subrogation appears to me to be grounded in the principle of extending it to those parties who have made the primary creditor whole, and, if applied here, would entitle both the depositary surety and the official sureties to subrogation to the rights of the county in the ratio as their respective payments in making the county whole bears to the entire debt. This conclusion is not reached without some misgiving, on account of the holding in this circuit in the case of National Surety Co. v. Salt Lake County, 5 F.(2d) 34, where a similar situation arose and the court awarded the official sureties the right of subrogation as against the depositary surety. The language of the court on page 36 is as follows:

"If the bond of appellant National Surety Company had been made to the county of Salt Lake, as obligee, or if section 4500, supra, of the statutes of Utah, had required it so to be made, or perhaps, even if the above section had made it absolutely obligatory upon Groesbeck to put the money of the county in some bank, there might be some force in the contention here urged. But the policy of the law of Utah seems, on casual view, to render the county treasurer absolutely liable to the county for the repayment to the county of all money belonging thereto, which may come to his hands as such treasurer. He is merely permitted to deposit such money in a bank, but without, by so doing, being able to shift the primary obligation for repayment from himself directly to the bank. We cannot see that the fact, that in some aspects the money so deposited is, by the bank, held as a trust fund for the county, has the effect to make the county, upon all views, the creditor of the bank. The treasurer is yet the debtor of the county, and the bank is the debtor of the treasurer."

I have felt inclined to make the distinction here which is suggested in the language above quoted. That case came under the Utah law, which is different from ours, in that the treasurer is an insurer of the county funds, and, as the court said, he is the debtor of the county, and the bank is the debtor of the treasurer. In this state, under the depositary law, the treasurer deposits only in designated depositaries approved by the governing board, performs the duties outlined by that law, and the county, not the treasurer, is at all times the creditor, the treasurer being merely an instrument, bound by specified rules, in representing the county. The debt of the county came into being by reason of the failure of the bank to account for the deposit. It was secured in one instance by a depositary bond to indemnify the county in case the deposit were not paid upon demand and in the other by official bonds of the treasurer that he would faithfully discharge his duties in protecting and securing that deposit. Both obligations were violated, and both sureties assisted in restoring the county and making it whole as to the single debt it held against the bank.

The assignment of the county's right to dividends and the collateral bonds I regard as of little consequence, for the reason that such an assignment which affected the equitable rights of others could not be effectual as against those rights any more than to merely convey the naked legal title impressed with a trust and the official sureties here must be held to have taken the assignment with full knowledge of the rights of the depositary surety. It will accordingly be held that both sets of sureties will be entitled to subrogation to the rights of the county, not only to unpaid and future dividends upon the entire claim of the county, but to the collateral security in proportion as their payments went to discharge the debt of the bank to the county.

[5] The remaining point is as to whether or not the plaintiff depositary surety is entitled to the double relief sought by the allowance of its claim upon the indemnity agreement and participation in dividends as general creditor and at the same time the right of subrogation.

Counsel have made a diligent search for authorities upon this point, but have found nothing which is convincing to the court. My view is that the two positions in which the depositary surety finds itself are entirely separate and distinct. In one, it is a straight creditor of the bank by virtue of the indemnity agreement. In the other, it assisted in discharging the debt and making the county whole, by virtue of which, the debt having been paid in full, it becomes subrogated in equitable proportions to the rights of the county.

The relationship of the two rights are as distinct as though they were held by two different individuals, and should be here so regarded. The surety companies of course can participate to no greater extent than to make themselves whole for the sums which they have paid.

A decree may be presented embodying the foregoing conclusions as of the date of this memorandum, reserving to the several parties their proper exceptions.